**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21-cv-02473<br><br>CLASS ACTION |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED COMPLAINT**

TABLE OF CONTENTS

Introduction...................................................................................................................1

Argument and Authorities............................................................................................2

    I.      The Opposition cannot identify an actionably false or misleading statement. ........................................................................................................2

          A.      The Opposition distorts the PSLRA standard. ...............................2

          B.      Particularized allegations of contemporaneous falsity are absent. ..............3

          C.      The Opposition cannot square its omission theory with Concho's disclosures or the case law. .........................................................6

          D.      The Opposition cannot duck the PSLRA's safe harbor. ..............................8

          E.      The Opposition mangles the *Omnicare* framework for opinion statements.......................................................................................10

          F.      The Opposition does not salvage the CC's claims against Schroer and Wright. ...................................................................................11

    II.      The Opposition fails to piece together a strong inference of scienter...................12

          A.      Motive is still missing, and the Opposition's save-the-company rhetoric is both legally baseless and factually revisionist. .........................12

          B.      The Opposition fails to rescue the CC's circumstantial scienter allegations. ...................................................................................13

               1.      Defendants' retrospective observations are miles from scienter-evincing "admissions."....................................................13

               2.      The FE accounts and unspecified meetings/access-to-data allegations do not move the scienter needle. ................................15

               3.      The oft-rejected "core operations" theory has no bearing here.......................................................................................17

               4.      The "day-to-day" involvement allegations are non-probative. ...................................................................................18

          C.      The Opposition fails to meaningfully grapple with the competing non-culpable inferences and retreats to an inapposite reckless-gamble theory..............................................................................19

    III.     The Section 20(a) claim fails. ..............................................................21

Conclusion ...................................................................................................................21

TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
  915 F.3d 975 (5th Cir. 2019) .........................................................................................17, 18

*Barrie v. Intervoice-Brite, Inc.*,
  397 F.3d 249 (5th Cir. 2005) ....................................................................................................2

*Berger v. Compaq Computer Corp.*,
  1999 WL 33620108 (S.D. Tex. Dec. 22, 1999)........................................................................9

*Bondali v. Yum! Brands, Inc.*,
  620 F. App'x 483 (6th Cir. 2015) .............................................................................................3

*Brody v. Zix Corp.*,
  2006 WL 2739352 (N.D. Tex. Sept. 26, 2006)......................................................................17

*Callinan v. Lexicon Pharm., Inc.*,
  479 F. Supp. 3d 379 (S.D. Tex. 2020), *aff'd*, 858 F. App'x 162 (5th Cir. 2021) ..............13, 19

*Carlton v. Cannon*,
  184 F. Supp. 3d 428 (S.D. Tex. 2016) ...........................................................................4, 8, 18

*Collmer v. U.S. Liquids, Inc.*,
  268 F. Supp. 2d 718 (S.D. Tex. 2001) ......................................................................................3

*Dawes v. Imperial Sugar Co.*,
  975 F. Supp. 2d 666 (S.D. Tex. 2013) ....................................................................................17

*Del. Cty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
  2022 WL 112029 (S.D. Tex. Jan. 12, 2022) ...........................................................................17

*Dempsey v. Vieau*,
  130 F. Supp. 3d 809 (S.D.N.Y. 2015)......................................................................................11

*Edgar v. Anadarko Petroleum Corp.*,
  2019 WL 1167786 (S.D. Tex. Mar. 13, 2019), *aff'd*, 788 F. App'x 268 (5th
  Cir. 2019) ................................................................................................................................16

*Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entm't Corp.*,
  524 F. Supp. 3d 501 (N.D. Tex. 2021) .................................................................................4, 15

*Firefighters Pension & Relief Fund of City of New Orleans v. Bulmahn*,
  2014 WL 6638793 (E.D. La. Nov. 21, 2014) .....................................................................13, 14

*Fitzpatrick v. Uni-Pixel, Inc.*,
   35 F. Supp. 3d 813 (S.D. Tex. 2014) ...................................................................................9

*Frank v. Dana Corp.*,
   646 F.3d 954 (6th Cir. 2011) .............................................................................................14

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
   514 F. Supp. 3d 942 (S.D. Tex. 2021) .................................................................................8

*Gillis v. QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016)................................................................................19

*Hall v. Rent-A-Ctr., Inc.*,
   2017 WL 6398742 (E.D. Tex. Oct. 19, 2017), *R&R adopted*, 2017 WL
   6379334 (E.D. Tex. Dec. 14, 2017)...............................................................................7, 8

*Heck v. Orion Grp. Holdings, Inc.*,
   468 F. Supp. 3d 828 (S.D. Tex. 2020) ...........................................................................4, 13

*In re Azurix Corp. Sec. Litig.*,
   198 F. Supp. 2d 862 (S.D. Tex. 2002), *aff'd*, 332 F.3d 854 (5th Cir. 2003) ...........................4

*In re Barrick Gold Sec. Litig.*,
   2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015)..................................................................12, 21

*In re BP p.l.c. Sec. Litig.*,
   2016 WL 3090779 (S.D. Tex. May 31, 2016)......................................................................10

*In re BP p.l.c. Sec. Litig.*,
   843 F. Supp. 2d 712 (S.D. Tex. 2012) ...............................................................................19

*In re Campbell Soup Co. Sec. Litig.*,
   145 F. Supp. 2d 574 (D.N.J. 2001) .....................................................................................1

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................................................1

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
   238 F. Supp. 3d 799 (S.D. Tex. 2017), *aff'd*, 925 F.3d 727 (5th Cir. 2019) ...........................7

*In re Grand Canyon Educ., Inc. Sec. Litig.*,
   2021 WL 3491779 (D. Del. Aug. 9, 2021), *R&R adopted*, 2021 WL 3726014
   (D. Del. Aug. 23, 2021) ..................................................................................................21

*In re Netsolve, Inc. Sec. Litig.*,
   185 F. Supp. 2d 684 (W.D. Tex. 2001)...............................................................................19

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
 245 F. Supp. 3d 870 (S.D. Tex. 2017), *aff'd*, 777 F. App'x 726 (5th Cir. 2019) ..............18, 19

*In re Sec. Litig. BMC Software, Inc.*,
 183 F. Supp. 2d 860 (S.D. Tex. 2001) ................................................................................18

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
 537 F.3d 527 (5th Cir. 2008) ........................................................................................15, 21

*Jaroslawicz v. M&T Bank Corp.*,
 962 F.3d 701 (3d Cir. 2020)................................................................................................11

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
 2015 WL 7760201 (W.D. Tex. Dec. 1, 2015) ..................................................................8, 12

*Knurr v. Orbital ATK Inc.*,
 276 F. Supp. 3d 527 (E.D. Va. 2017) .................................................................................10

*Kovtun v. VIVUS, Inc.*,
 2012 WL 4477647 (N.D. Cal. Sept. 27, 2012), *aff'd*, 591 F. App'x 592 (9th
 Cir. 2015) ............................................................................................................................19

*Lain v. Evans*,
 123 F. Supp. 2d 344 (N.D. Tex. 2000) ................................................................................3

*Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
 810 F.3d 951 (5th Cir. 2016) ..............................................................................................14

*Lormand v. US Unwired, Inc.*,
 565 F.3d 228 (5th Cir. 2009) .......................................................................................7, 9, 10

*Mahoney v. Found. Med., Inc.*,
 342 F. Supp. 3d 206 (D. Mass. 2018)...................................................................................9

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
 513 F.3d 702 (7th Cir. 2008) ..............................................................................................20

*Naglich v. Applied Optoelectronics*,
 436 F. Supp. 3d 954 (S.D. Tex. 2020) ................................................................................18

*Nathenson v. Zonagen Inc.*,
 267 F.3d 400 (5th Cir. 2001) ........................................................................................10, 17

*Neiman v. Bulmahn*,
 854 F.3d 741 (5th Cir. 2017) ...........................................................................14, 15, 16, 18, 20

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
 300 F. Supp. 3d 551 (S.D.N.Y. 2018)...................................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)..................................................................................................11

*Owens v. Jastrow*,
   789 F.3d 529 (5th Cir. 2015) .......................................................................15, 16, 21

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir. 2005) .................................................................................14, 18

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ...................................................................................13

*Ramirez v. Exxon Mobil Corp.*,
   334 F. Supp. 3d 832 (N.D. Tex. 2018) .....................................................................10

*Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
   935 F.3d 424 (5th Cir. 2019) ...................................................................................14

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) .....................................................................................7

*Rougier v. Applied Optoelectronics, Inc*,
   2019 WL 6111516 (S.D. Tex. Mar. 27, 2019)..................................................7, 10, 17

*Shen v. Exela Techs., Inc.*,
   2022 WL 198402 (N.D. Tex. Jan. 21, 2022) ..............................................................8

*Shreiber v. Synacor, Inc*,
   832 F. App'x 54 (2d Cir. 2020) ...............................................................................11

*Singh v. Schikan*,
   106 F. Supp. 3d 439 (S.D.N.Y. 2015).........................................................................7

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ...............................................................................16, 17

*Spitzberg v. Houston American Energy Corp.*,
   758 F.3d 676 (5th Cir. 2014) ...........................................................................15, 16, 20

*Stephens v. Uranium Energy Corp.*,
   2016 WL 3855860 (S.D. Tex. July 15, 2016)............................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................................2, 13, 21

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
   273 F. Supp. 3d 650 (N.D. Tex. 2017) ......................................................................21

v

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
    2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) ...........................................................................8

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) .................................................................................................3

*Yang v. Nobilis Health Corp.*,
    2021 WL 3619863 (5th Cir. Aug. 13, 2021)..............................................................17, 18, 19

*Zhang Yang v. Nobilis Health Corp.*,
    2020 WL 6815402 (S.D. Tex. June 25, 2020), *R&R adopted in relevant part*,
    2020 WL 5512456 (S.D. Tex. Sept. 14, 2020), *aff'd*, 2021 WL 3619863 (5th
    Cir. Aug. 13, 2021) ....................................................................................................18, 19

**STATUTES**

15 U.S.C. § 78u-4(b)(1)(B)...........................................................................................................2

15 U.S.C. § 78u-5(c)(1)(B) .........................................................................................................10

**OTHER AUTHORITIES**

NEW OXFORD AMERICAN DICTIONARY (2010) ...............................................................................10

Securities Class Action Filings: 2021 Year in Review, CORNERSTONE .........................................1

vi

## INTRODUCTION

Plaintiffs' Brief in Opposition ("Opposition" or "Opp.") to Defendants' Motion to Dismiss ("Motion" or "MTD") reads as if the PSLRA does not exist.[1] It downplays dismissals as rare, Opp. 11, when the statistics prove otherwise.[2] And it points to future discovery in hopes of finding the particularized *facts* completely absent from the CC, *id.* at 17 n.10, when the whole point of the PSLRA and its discovery stay is to "flush[] out suits"—like this one—"built on mere speculation and conclusory allegations and which aim to use discovery as a fishing expedition to substantiate frivolous claims." *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 595 (D.N.J. 2001).

The Opposition only magnifies the CC's missteps, offering no particularized allegations that statements were false or misleading when made and constructing an omission theory that studiously ignores Concho's robust disclosures about its experimental projects. It likewise fails to connect concrete, contrary facts—as opposed to mere internal dissent—to the individual defendants in ways that demonstrate any inference of scienter, much less the requisite strong inference. And it ignores much of the binding Fifth Circuit authority cited in the Motion, resorting to inapplicable scienter-imputation theories and a "reckless gamble" theory that falls flat.

But perhaps most remarkable is the Opposition's inability to cite a single case in which a § 10(b) complaint survived dismissal when (a) its core thesis was that defendants' use of descriptors like "tests" or "experiments" was inadequate to convey the experimental nature of a project, or (b) the most plausible inference was that defendants *actually believed* what they were saying, as the CC's Former Employee ("FE") accounts describing Defendants' "hubris,"

---

[1] All internal quotation marks, citations, and footnotes from quoted material have been omitted. All abbreviations are as they were in Defendants' Motion.

[2] *See* Securities Class Action Filings: 2021 Year in Review, CORNERSTONE at 18 (43% of securities complaints filed between 1997 to 2021 were dismissed, including 54% of those filed in 2017–18 and 48% of those filed in 2019); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) ("dismissal rates in securities class actions have nearly doubled since the passage of the PSLRA").

"overconfidence," and drinking "their own Kool-Aid" emphatically confirm. CC ¶¶ 144, 346. This Court should not be the first to greenlight a securities-fraud complaint under those circumstances.

## ARGUMENT AND AUTHORITIES

**I.     The Opposition cannot identify an actionably false or misleading statement.**

Blowing by bedrock PSLRA requirements, the Opposition fails to articulate with particularity how or why any factual statement was false when made. It falls back on a concealed-risk theory that ignores Concho's disclosures of the very things claimed to be omitted. And it fails to extricate the many subjective, predictive Challenged Statements from the PSLRA's safe harbor or the onerous *Omnicare* standard for opinions. Each of these defects is grounds for dismissal.

### A.     The Opposition distorts the PSLRA standard.

The Opposition begins by misstating the law, urging a "holistic" analysis as to "whether an alleged misstatement or omission is actionable." Opp. 13. But the cited "holistic" analysis required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), applies uniquely to the analytical framework for *scienter*, *id.* at 326—not to whether an actionable statement exists. To allege an actionable statement, the PSLRA dictates that a complaint must, with particularity, (a) specify "*each* statement alleged to have been misleading," and (b) explain the "reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B) (emphasis added). Indeed, *Barrie v. Intervoice-Brite, Inc.*, cited at Opp. 13, *rejected* Plaintiffs' exact conflation:

> [T]he plaintiffs argue that the district court improperly dismissed its claims of false statements about the merger because it read the allegations in isolation rather than viewing the complaint *in toto*. This argument … fails. While this Court will view a complaint *in toto* when considering whether a complaint has adequately plead scienter, … **each allegation of fraud must individually meet the particularity requirements of the PSLRA**.

397 F.3d 249, 260 (5th Cir. 2005) (emphasis added). The Opposition jettisons this requirement because it cannot meet it, instead offering only broad, *impressionistic* allegations of falsity,

decoupled from what Defendants actually said and when. *Infra* § I.B. That method is not viable.[3]

        **B.**      **Particularized allegations of contemporaneous falsity are absent.**

The Motion explained how the CC failed to allege with particularity *how* or *why* each conceivably factual statement was false or misleading when made. MTD 12–16. The Opposition concedes that "the lion's share" of "allegations turn on what ***wasn't*** said," Opp. 15, but its weak attempts to identify the below categories of factually misleading statements come up well short.[4]

      ***Successes of large-scale development.*** The Opposition recycles statements describing the early success of Concho's transition to large-scale development, Opp. 16, but it never contradicts—much less with particularity—what its own FE accounts confirm: that Concho "had been immensely successful and was growing fast" before the Dominator. CC ¶ 144. The Opposition can muster only a vague, conclusory reference to "many projects … underperforming," *id.* at 6, without articulating *which* projects and *when*. *See Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 756 (S.D. Tex. 2001) (rejecting "conclusory allegations against all the other facilities [that] appear[ed] to be generalizations that Plaintiffs have drawn from the specific problems of the Detroit plant and applied without any supporting facts in these other acquired facilities").

      ***Early Dominator results.*** The Opposition similarly asserts that the Dominator's production lagged behind projections "early on" and that "issues started to emerge with the second phase." Opp. 6, 18. But it never confronts the CC's core temporal defect—its failure to allege with particularity that the Dominator's production was not, in fact, "pretty good" *when* Concho reported

---

[3] *See, e.g.*, *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179–80 (5th Cir. 1997) (rejecting claim that failed to "isolate statements and particularize their falsity"); *Lain v. Evans*, 123 F. Supp. 2d 344, 348 (N.D. Tex. 2000) ("[t]he PSLRA does not permit the Court to look at the broad picture to determine if Plaintiff has properly plead its claim," in lieu of "examin[ing] each statement"); *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015) ("Other circuits do not forego a statement-by-statement analysis of objective falsity in favor of analyzing the overall impression made by a set of statements. Rather, other circuits, like this circuit, undertake a statement-by-statement analysis.").

[4] As explained in the Motion, MTD 12, these truthful statements are representative of those challenged in the 185-page CC and collected in Defendants' Appendix for the Court's convenience. MTD App'x A.

that preliminary information at the close of Q1 2019. MTD 13–14. Concho disclosed in Q2 2019 that the Dominator's results trailed off from "solid" initial results. *Id.* at 8. But neither that disclosure nor the temporally adrift FE accounts displace the rule that a company's later negative results do not make the company's earlier good results false. *Heck v. Orion Grp. Holdings, Inc.*, 468 F. Supp. 3d 828, 848 (S.D. Tex. 2020) ("a plaintiff must allege facts capable of raising a plausible inference that earlier statements were false when made").

Nor can the Opposition evade the Motion's alternative ground for rejecting these allegations—Concho's preliminary report of "pretty good" and "strong" results is classic, non-actionable puffery. MTD 13 & n.8. Generalized, optimistic statements are not misleading just because they address a specific project or are made amidst broader future projections.[5] Despite its efforts to conflate the preliminary, heavily caveated Q1 2019 Dominator statements with specific (but undisputedly *true*) statements about Concho's other projects, Opp. 25, the Opposition fails to identify any "specific and concrete" Dominator statement that resembles those in its cited cases.[6]

*Technological basis/gradual development.* The Opposition's pitch on the supposed lack of a "technological basis" for Concho's large-scale development progression is deeply flawed:

- It repeats hollow critiques of Concho's non-Dominator reports of "well documented" "drilling synergies" without contesting that Concho had, in fact, experienced precisely those synergies as it built up towards the Dominator. Opp. 18; *supra* at p.3.

- It plucks out-of-context soundbites from Challenged Statements to suggest Defendants represented that Concho had completion designs all figured out, Opp. 18, when Defendants repeatedly cautioned that Concho was still learning. MTD 4–8. For example, Giraud made the "later stage of innings" statement in the context of particular hydrocarbon formations and immediately followed it with the caution that "[t]here's *definitely more innings*, there's

---

[5] *See, e.g.*, *In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 887 (S.D. Tex. 2002) (statement describing "project as possessing 'considerable potential both for the community and for the company'" was puffery), *aff'd*, 332 F.3d 854 (5th Cir. 2003); *Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entm't Corp.*, 524 F. Supp. 3d 501, 533 (N.D. Tex. 2021) (statements that theme "parks are progressing nicely" and company "[would] not be stopping at 10 parks" in China were puffery).

[6] *E.g.*, *Carlton v. Cannon*, 184 F. Supp. 3d 428, 494 (S.D. Tex. 2016) (involving "specific and concrete statements," such as detailed yield predictions tied to current production).

4

no doubt about that." MTD App'x A at 13 (emphasis added). And Giraud made the "come through discovery" statement in the context of the ordinary timeline of hydrocarbon discovery, delineation, and development, and immediately followed it with a caution that Concho is "continu[ing] to learn" with respect to "completion design." *Id.* at 12.

- It alleges that Concho made a "*secret[]* determin[ation] to find the limits of well-spacing even if [it] need[ed] to 'take [its] lumps,'" Opp. 18 (emphasis added), when Concho *publicly* and contemporaneously described the Dominator as exactly that: an "aggressive" spacing test designed to "jump a couple of steps down the line" and demonstrate "where [Concho would] see inefficiencies." MTD 7.

This unparticularized falsity narrative cannot survive dismissal.

***Forecasts/"baked" in risk.*** The Opposition critiques Concho's forecasts and production guidance (without identifying any particular incorrect estimate or historical data input) as allegedly failing to account for well-spacing risks and thus being "unreasonably high." Opp. 19. That omission refrain (*infra* § I.C) is contradicted by the CC's own pleading that Defendants aimed to "*under promise* and over deliver." CC ¶ 3 (emphasis added). More importantly, the Opposition fails to identify any representations that Concho's forecasts *did* account for such risks, citing only anodyne statements that contain no such assurance. *E.g.*, Opp. 8 (citing Leach statement that "we try to forecast the things that we're aware of at the time we give the guidance"). Worse, the Opposition ignores Concho's warning that such "drilling locations have *not* been fully risked by Company management and are inherently more speculative." MTD 6, 19, 28 (emphasis added). And it stubbornly distorts Giraud's "baked into" statement when the plain language of that statement[7] pertains to *efficiency gains* based on past successes—not "degradation due to tight well spacing" or "all well-spacing risks," *contra* Opp. 19 & n.11. That is no way to plead falsity.

---

[7] Ex. 16, Q2 2018 Call Tr. at 13 (full text: "Big drivers on going to these large-scale projects are: one, we think maximizing the resource by minimizing the impact of the parent-child effect; and then also getting the benefits on the capital side from efficiency. So those are kind of the 2 big drivers behind going to project development. As it relates to kind of what we're seeing compared to what we're expecting, we have built our type curves and our internal modeling based upon the results we have seen here. So I think everything we've seen has been consistent with what we were expecting. And is baked into that outlook that we're talking about for '19 and '20.").

***The Dominator versus Concho's portfolio.*** Finally, the Opposition identifies no false statement about Concho's portfolio of projects. The Opposition instead continues to twist out-of-context snippets (at 20[8]) of the Challenged Statements to suggest Concho failed to telegraph its broader pursuit of spacing tests. But it does not dispute that Concho specifically disclosed where its more "modest" spacing tests sat in relation to the Dominator, how it had transitioned to large-scale development across its "entire portfolio," and how these projects—and not just the Dominator—"continue[d] to experiment with different completion designs, timing, [and] spacing." MTD 15–16. And the Opposition derides Defendants' reliance on these disclosures of "tests" across Concho's portfolio as "comical" in one breath, while conceding in the next that "the term 'test'" might have been "literally true when spoken." Opp. 20–21.

**C.      The Opposition cannot square its omission theory with Concho's disclosures or the case law.**

The Opposition presses its concealed-risk rhetoric while ignoring the Concho disclosures it does not like, including that:

- "drilling locations" and "estimates" associated with "tighter spacing" "have not been fully risked … and are inherently more speculative than proved reserves estimates," MTD 6;

- Concho was "still learning as we go" and "test[ing] tighter spacing or different spacing" and "experiment[ing]" across its portfolio, *id.* at 6, 15; and

- the Dominator was a purposeful "effort to kind of jump a couple of steps down the line and see if running 7 rigs at a square mile, where do you see inefficiencies and how can you go attack those" and Concho's "most extreme version of activity," *id.* at 7.

The Opposition offers no reason to ignore these disclosures, save a throwaway assertion that "the Court must only be guided by and evaluate the facts as alleged in the Complaint." Opp. 14. But

---

[8] *Compare* Opp. 19 (characterizing "portfolio approach to mitigate risk" statement), *with* MTD App'x A at 18 (statement actually appears in discussion of shipping crude to different locations in order to have "a number of different pricing points in a portfolio"); *compare* Opp. 20 (characterizing "expect more of the same" statement), *with* MTD App'x A at 7 (statement actually relates to "a budget focused on reinvesting our cash flow and an *increased percentage* of capital going towards these larger-scale projects") (emphasis added).

courts must consider the full "context" supplied by "documents … attached[ed] to [a] motion to dismiss [that] were referenced and relied upon by Plaintiffs in their … [c]omplaint." *In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 238 F. Supp. 3d 799, 815 (S.D. Tex. 2017) (collecting cases), *aff'd*, 925 F.3d 727 (5th Cir. 2019).

The Opposition cites no authority to counter that (1) labeling predictions as "experiments" or "tests" adequately conveys inherent risk and uncertainty, and (2) omission theories faulting defendants for not adopting more "gloomy" or "pessimistic" descriptors are not viable. MTD 16–17 (collecting cases). The Opposition demands that Defendants use the sort of "eye-catching or negative phrasing," *see* Opp. 16 ("exorbitant risk"), 18 ("Frankenstein's monster"), that courts hold they were not required to use. *Singh v. Schikan*, 106 F. Supp. 3d 439, 448 (S.D.N.Y. 2015); *accord Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003) (defendants are "under no duty to cast [their] business[es] in a pejorative, rather than a positive, light").

None of the Opposition's cases involved allegations that self-described "tests" were not described in risky enough terms, nor did they, more broadly, involve mere internal division over an initiative's strategic merits. Instead, each case fits the traditional § 10(b) paradigm of omitted operational *problems* or other already materialized *bad news* that contradicted positive statements:

- *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 235–38, 249, 253 (5th Cir. 2009) – Defendants touted an initiative despite "recogniz[ing] signs that the dangers they had privately predicted had already materialized" and despite defendant-CEO's prior admission that the initiative "would cause our business plan to fail."

- *Rougier v. Applied Optoelectronics, Inc*, 2019 WL 6111516, at *1 (S.D. Tex. Mar. 27, 2019) – Company concealed a "significant known decrease in demand from Amazon, [its] largest customer (accounting for 50-60% of [the company's] total revenue) as a result of undisclosed product quantity and quality control issues."

- *Hall v. Rent-A-Ctr., Inc.*, 2017 WL 6398742, at *10, *18 (E.D. Tex. Oct. 19, 2017), *R&R adopted*, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017) – Defendants "falsely touted [the] SIMS [program] as 'fully operational'" despite "actual knowledge of the alleged problems with SIMS, including repeated failures during its implementation."

The CC's allegations bear no resemblance to these (or the Opposition's other[9]) cases because they do not demonstrate that Defendants concealed any bad news *before* disclosing the Q2 2019 results.

*Hall*'s discussion of *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016), illustrates this distinction. *Waterford* dismissed a complaint involving "positive statements regarding the [company's] live check program," even though "lower-level branch staff were skeptical of" the program, because the complaint "alleged no facts demonstrating that management believed the Company's underwriting practices were unsound or inappropriate." *Hall*, 2017 WL 6398742, at *22–23. "In *Waterford*" and in this case, "unlike in [*Hall* and the cases above], the plaintiffs did not allege the defendants were aware of ongoing material problems that were already causing problems at the time the statements or omissions were made," but rather that "defendants made poor business choices" that "were likely to lead to such problems." *Id.* at *23.

### D.      The Opposition cannot duck the PSLRA's safe harbor.

The Opposition incorrectly asserts that the Motion does not show any particular statement was forward looking. Opp. 21. But the Motion and its appendix identify more than 30 of the CC's 68 challenged statements as forward looking—and the Opposition cannot and does not explain how *any* do not qualify. Nor can the Opposition credibly contest the propriety of using an appendix to delineate the non-actionability of voluminous challenged statements, when defendants and courts routinely do just that.[10] In the modern age of 185-page securities complaints like the CC

---

[9] *See Carlton*, 184 F. Supp. 3d at 468–72 (touting plant's viability and downplaying "start-up issues," when, in reality, "severe problems" (plant shutdowns, leaks, low yields, etc.) had materialized); *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 951–52 (S.D. Tex. 2021) (representing well "was a very successful appraisal well" when it "was a dry hole"); *KB Partners I, L.P. v. Pain Therapeutics, Inc.*, 2015 WL 7760201, at *10– 12 (W.D. Tex. Dec. 1, 2015) (representing "that [drug company's] stability problems had been resolved" when defendants knew they persisted); *Shen v. Exela Techs., Inc.*, 2022 WL 198402, at *3 (N.D. Tex. Jan. 21, 2022) (representing company had "stable base of customers" and 90% of its revenue was "recurring" and "predictable" when revenue was unpredictable and 20% was nonrecurring).

[10] *E.g.*, *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 582 (S.D.N.Y. 2018) (district

and finite page limits for motions to dismiss, a contrary rule would render the safe harbor illusory.

The Opposition notes that the safe harbor does not cover present facts. Opp. 21. But with no false statement of present fact, *supra* § I.B, the Opposition is left recycling still more cases in which the relevant risks had *already materialized* into problems. *See Fitzpatrick v. Uni-Pixel, Inc.*, 35 F. Supp. 3d 813, 826–28 (S.D. Tex. 2014) (forecasts were actionable because existing production problems made them unattainable); *Berger v. Compaq Computer Corp.*, 1999 WL 33620108, at *3 (S.D. Tex. Dec. 22, 1999) (same when defendants concealed "unsustainable and undisclosed practices" like "flooding the market with inventory and selling accounts receivables to third parties at a discount"); *supra* at p.7 (distinguishing *Lormand* and *Rougier*). The CC identifies no such extant problems at the time of the Challenged Statements.

The Opposition escapes neither of the safe harbor's disjunctive prongs. As for the first, the Opposition labels the 2019 10-K "well-spacing risk disclosure" as "precisely the risk that should have been disclosed during the Class Period," Opp. 23, but ignores Concho's Q1 2018 warning of exactly that—the "inherently more speculative nature" of "additional drilling or recovery techniques" including "*tighter spacing*." Ex. 10, Q1 2018 Deck at 3 (emphasis added). Next, the Opposition attempts to paint Concho's earlier 10-K risk disclosures as "tepid" and "boilerplate," Opp. 23, but cannot seriously liken the on-point warnings that a "high concentration of activity" carried "drilling, completion and operating risks, including [its] ability to efficiently execute large-scale development," MTD 8, to the truly boilerplate disclosures *Lormand* rejected. *See* 565 F.3d at 244 ("known and unknown risks and other factors that could cause actual results to be materially different"). Finally, the Opposition's suggestion that a "high concentration of activity" does not

_____

court opinion attaching an appendix collecting 70 challenged statements); *Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 212 (D. Mass. 2018) ("reference table cataloguing the misstatements and omissions alleged in the Amended Complaint and explaining why they are not actionable under Rule 10b–5" was "helpful to the Court").

9

encompass tighter well spacing, Opp. 23 n.14, is just silly. A "concentration" is by definition a "*close* gathering." *Concentration*, NEW OXFORD AMERICAN DICTIONARY (2010).

As for the second prong, the Opposition fails to demonstrate the "actual knowledge" requirement. 15 U.S.C. § 78u-5(c)(1)(B); *see infra* § II. In fact, the Opposition's pivot to a "reckless gamble" theory, *infra* § II.C, all but concedes as much. *See Nathenson v. Zonagen Inc.*, 267 F.3d 400, 409 (5th Cir. 2001) ("actual knowledge," not "severe recklessness," is required).

### E.    The Opposition mangles the *Omnicare* framework for opinion statements.

At each turn, the Opposition responds to Defendants' arguments on the various *Omnicare* components by either ignoring them or distorting the proper framework.

***Threshold opinion characterization.*** The Opposition takes issue with the Motion listing many Challenged Statements as opinions, Opp. 24 & n.16, but never (a) explains how a single one of those predictive, subjective statements falls outside *Omnicare*, or (b) responds to the settled principle that "[e]stimates and projections are classic examples of opinions." *In re BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at *8 (S.D. Tex. May 31, 2016).

***Embedded Facts.*** The Opposition relies exclusively on its preceding and defective falsity discussion as grounds for finding false embedded facts. Opp. 24; *see supra* § I.B. And it points only to cases involving discrete, misrepresented facts that readily contrast with the CC.[11]

***Inquiry.*** The Opposition contests *Knurr v. Orbital ATK Inc.*'s holding that *Omnicare*'s inquiry prong requires a "total lack of inquiry." 276 F. Supp. 3d 527, 538 (E.D. Va. 2017). But it offers no *Omnicare*-derived case that interprets the inquiry prong differently. Opp. 24 (referring to *Lormand*, 565 F.3d at 249, a pre-*Omnicare* decision that says nothing about inquiry liability).

---

[11] *See Rougier*, 2019 WL 6111516, at *10 (allegation: "embedded fact[s] that manufacturing issues … were not responsible for Amazon's decrease in demand" when opposite was true); *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 846–48 (N.D. Tex. 2018) (allegation: statement that impairment determination "applied a proxy cost of carbon" was false because it in fact did not).

Nor does it dispute the CC's FE accounts that critique but nevertheless acknowledge Concho's pre-opinion diligence and modeling, MTD 22—which dooms any theory under *Omnicare*'s inquiry prong. *See, e.g., Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 718 (3d Cir. 2020) (rejecting *Omnicare* claim premised on allegations that pre-merger diligence was insufficient).

***Contrary Facts.*** The Opposition ignores the omitted-contrary-facts prong and the cases involving employee disagreement with projections (MTD 22–23 & n.13), just as it ignores Concho's voluminous disclaimers of uncertainty. *See, e.g.*, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 195 (2015) (a speaker "need only divulge an opinion's basis, or else make clear the real tentativeness of its belief"); *Jaroslawicz*, 962 F.3d at 718 (rejecting *Omnicare* claim when "[c]autionary language surround[ed] the opinions").

***Subjective Disbelief.*** Tacitly conceding its failure to "show that the Individual Defendants believed their well-spacing wager would fail," the Opposition suggests the subjective-disbelief prong requires only that defendants "knew [well-spacing] was far riskier and subject to far greater undisclosed costs, write-downs, and/or risks than publicly disclosed." Opp. 25. No citation accompanies that proposition because a subjectively disbelieved opinion is precisely how it sounds—an opinion the speaker "did not actually believe" or "honestly h[o]ld." *Shreiber v. Synacor, Inc*, 832 F. App'x 54, 57 (2d Cir. 2020); *see also Dempsey v. Vieau*, 130 F. Supp. 3d 809, 818 (S.D.N.Y. 2015) ("[T]o allege subjective falsity, plaintiffs must allege that the speaker did not truly believe the opinion given."). The CC alleges just the opposite of that here. MTD 20 (collecting FE accounts of Defendants' "hubris" and "feeling that they had the 'Midas touch'").

**F.      The Opposition does not salvage the CC's claims against Schroer and Wright.**

The claims against Schroer and Wright should be dismissed out of hand—not "because they 'simply' signed Concho's annual reports," Opp. 26, but because the CC never articulates how any statement in the annual reports—including the Challenged Statements about "large-scale

11

development projects and proved reserves"—were false or misleading when made. MTD 23. And the Opposition does not even come close to showing a strong inference of scienter as to either one. *Infra* § II.[12] It argues Wright "was at the Company until 2019, when FE-1 repeatedly brought up his concerns in meetings," Opp. 30 (citing CC ¶ 86)—meetings it does not allege Wright attended. And it alleges only that Schroer was at meetings where the Dominator "likely" was discussed, Opp. 30 (citing CC ¶ 105)—something far short of a strong inference of scienter. *Infra* § II.B.2.

**II.     The Opposition fails to piece together a strong inference of scienter.**

With no cognizable motive, the CC must meet the high bar for circumstantial scienter allegations. The Opposition comes nowhere close to showing how the CC does so. It connects no concrete, contrary facts to the speaking defendants and instead falls back on inapposite scienter-imputation theories and FE accounts that only strengthen the non-culpable inference that Defendants believed what they said. The Court should dismiss for this independent reason.

**A.     Motive is still missing, and the Opposition's save-the-company rhetoric is both legally baseless and factually revisionist.**

The Opposition never says the word "motive." It just repeats that "Defendants engaged in an undisclosed fraudulent bet-the-company endeavor in hopes of *saving* the company," Opp. 34, without discussing cases rejecting this theory (MTD 25 & n.17) or explaining how this makes for a concrete motive. *See In re Barrick Gold Sec. Litig.*, 2015 WL 1514597, at *9 (S.D.N.Y. Apr. 1, 2015) (allegedly "gambling on a risky project in the hope that external events will conspire to make it profitable does not constitute motive for the purposes of securities fraud—it is instead a desire for profits that is common to most corporate officers"). Nor does the Opposition dispute the CC's *own allegations* throttling the notion that Concho was struggling to remain afloat. *E.g.*, CC

---

[12] The Opposition's cases only confirm that scienter and falsity must be adequately pleaded as to "each defendant" individually. *E.g.*, *KB Partners*, 2015 WL 7760201, at *11.

¶ 144 (Concho "had been immensely successful and was growing fast"). With no "facts" that the alleged gamble "was essential to the Company's survival," the conclusory quasi-motive allegation goes nowhere. *Callinan v. Lexicon Pharm., Inc.*, 479 F. Supp. 3d 379, 433–34 (S.D. Tex. 2020), *aff'd*, 858 F. App'x 162 (5th Cir. 2021). Thus, the CC must meet the "correspondingly greater" test for circumstantial scienter. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 644–45 (5th Cir. 2005).

### B.      The Opposition fails to rescue the CC's circumstantial scienter allegations.

#### 1.      Defendants' retrospective observations are miles from scienter-evincing "admissions."

The Motion explained that what the CC labeled "admissions," CC at 43, were benign, retrospective analyses of what caused Concho's disappointing results. MTD 32 (collecting cases rejecting "admissions" theories). The Opposition labels that argument a "fact-based" "competing interpretation of events" not fit for a motion to dismiss. Opp. 27. That is simply wrong. The Motion's cases were ***all*** decided on the pleadings, and courts "must consider … competing inferences" that weigh against scienter at the dismissal stage. *Tellabs*, 551 U.S. at 314.

The Opposition also waves off these contrary cases as not "analogous temporally" because they supposedly involved "admissions" made beyond the one-quarter gap between Concho's measured Q1 2019 introduction of the Dominator's "pretty good" initial production and its Q2 2019 disclosures that well-spacing issues caused disappointing results. Opp. 27. Even if that were temporally accurate,[13] Concho's disclosing bad news promptly is a scienter-*negating* fact. The strikingly similar speedy disclosure in *Firefighters Pension & Relief Fund of City of New Orleans v. Bulmahn*—where disappointing well results disclosed "less than two months after the allegedly false statements, in connection with the earliest quarterly earnings report following the initial

---

[13] It is not. *Compare* Opp. at 27 n.22 (describing *Heck* as involving "'poor financial results' disclosed up to a year after alleged misrepresentations"), *with Heck*, 468 F. Supp. 3d at 847–48 (May and August 2018 statements not rendered actionable by October 2018 report of production delays issued five and two months later, respectively).

13

announcement of" daily production—"weigh[ed] against an inference of fraudulent intent" because "[n]othing in the complaint suggest[ed] [the speaker] had anything at all to gain by lying about the production numbers in September, only to turn around and discuss them candidly in early November." 2014 WL 6638793, at *22 (E.D. La. Nov. 21, 2014). So too here.

The Opposition also focuses on *Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005)—an oft-invoked (but rarely analogous) exception to the Fifth Circuit's rule that "[t]emporal proximity is weak circumstantial evidence of fraud." *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 436 (5th Cir. 2019) (no scienter for April 2015 statement despite contrary May 2015 event). *Plotkin* involved a "fledgling," struggling company's announcement of a $25-million annual purchase agreement, worth roughly 80 times the company's prior year revenue, with two supposedly "significant international companies" that were actually new, tiny, and related. 407 F.3d at 694, 697–98. The deal collapsed "quickly and spectacularly" after its announcement. *Id.* at 694.[14] Concho was hardly a miniature, struggling company within the narrow "special circumstances" in *Plotkin*. *Infra* § II.B.3; *see Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 959 (5th Cir. 2016) (distinguishing *Plotkin* in a case with a large company). More importantly, *Plotkin* involved an egregious juxtaposition between rosy statements on "Day One" and obvious, underlying facts revealed on "Day Two" that *must* have existed on Day One and which defendants *must* have contemporaneously known. 407 F.3d at 698. That looks nothing like the timeline alleged here, where Concho gathered and disclosed the disappointing Dominator results as they became available—on the first quarterly call following the foreshadowed "critical 60 days of production." CC ¶ 295; *Bulmahn*, 2014 WL 6638793, at *22.

---

[14] Likewise, in *Frank v. Dana Corp.* (Opp. 27 n.21), up until the day executives "announced that Dana would be reducing its earning projections by [50%]," their statements about Dana and its financial performance had been positive, and the company filed for bankruptcy months later. 646 F.3d 954, 957, 960 (6th Cir. 2011).

14

### 2.    The FE accounts and unspecified meetings/access-to-data allegations do not move the scienter needle.

*FE accounts.* The Opposition's argument that FE allegations need not be discounted is flat wrong: "courts must discount allegations from confidential sources." *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008). And its authority-less position that a divergence of opinions between certain employees and higher management shows scienter, Opp. 30, runs afoul of controlling Fifth Circuit decisions:

- *Neiman v. Bulmahn*, 854 F.3d 741, 752 (5th Cir. 2017) – "The fact that others disagreed with Defendants' assessments of ATP's liquidity does not indicate that Defendants' assessments were not truly or reasonably held."

- *Owens v. Jastrow*, 789 F.3d 529, 542 (5th Cir. 2015) – Rejecting scienter inference even while *crediting* CW 1's alleged warning to multiple individual defendants regarding problems with internal valuation models. *Contra* Opp. 31 n.25.

FE-1's frustration that he "was not being heard" by Giraud, who was two levels above him, CC ¶¶ 74, 86, is an example of precisely this type of nonactionable disagreement.[15]

As for Leach, Harper, Wright, and Schroer, no FE claims to have interacted with them in any way. MTD 28 (collecting cases rejecting similarly untethered FE accounts). The Opposition claims "they did," but cites only purported disagreements between FE-1 and Giraud. Opp. 30 (citing CC ¶¶ 77–79, 81, 86, 87). The Opposition's sole in-Circuit case for its argument that personal interaction is not required, *Spitzberg v. Houston American Energy Corp.*, 758 F.3d 676 (5th Cir. 2014), is no help. Opp. 30 n.24. *Spitzberg* relied on the "extremely small size of the company"—*three total employees*—to infer defendants' actual knowledge about the falsity of a statement touting oil inflows when in fact *no* oil had flowed and a statement touting more "recoverable reserves" in its Colombian oil-and-gas concession than "all of Colombia" (with

---

[15] *See also, e.g.*, *Six Flags*, 524 F. Supp. 3d at 528–29 (rejecting "FE1's conclusory assertion that there was 'absolutely no way' Six Flags could meet its projections").

15

"reserves" being a term of art that conveyed a certain level of production or testing) when in fact "*no* such production or geological testing had yet occurred." 758 F.3d at 681, 684, 685 n.13 (emphasis added).[16] Nothing approaching those facts is present here.

***Unspecified meetings and "access" to data.*** Ignoring cases rejecting this basis for pleading scienter, MTD 31, the Opposition forges ahead with vague allegations of attendance at "meetings," including speculation about "weekly Tuesday meetings amongst the executives where Dominator *would have* been discussed," and "access" to data, Opp. 28–31, 33 (emphasis added). But the CC must allege *what* was said in *which* meeting or report that a defendant attended or received that showed that what he or she said or was about to say was false. *See Edgar v. Anadarko Petroleum Corp.*, 2019 WL 1167786, at *9–10, *15–17 (S.D. Tex. Mar. 13, 2019) (rejecting scienter based on non-particularized allegations about meetings and conversations), *aff'd*, 788 F. App'x 268 (5th Cir. 2019); *Owens*, 789 F.3d at 542 & n.13 (rejecting meeting-based allegations when complaint did "not plead with particularity the dates of the … meetings or the substance of the conversations, alleging only that they began in the fourth quarter of 2007 and continued into 2008"). The CC provides little detail about the meetings in which FE-1 expressed "concerns" to Giraud, conspicuously omitting when they occurred, where, who was there, or what FE-1 allegedly said. CC ¶¶ 74–105. And the CC's rote speculation about weekly executive meetings where "Dominator was likely discussed," CC ¶ 105, adds nothing to scienter.[17] *E.g.*, *Owens*, 789 F.3d at 542 & n.13.

The Opposition's "access" to data allegations, Opp. 31–35, fail for similar reasons: the CC never alleges how such data contradicted a statement when made, nor how any purported contrary

---

[16] *See Owens*, 789 F.3d at 541 (distinguishing *Spitzberg* where "disclosures conveyed to investors that [various] valuations were far from certain"); *Bulmahn*, 2014 WL 6638793, at *12 n.63 (same in 60-employee company case).

[17] The Opposition's pleading deficiencies are especially apparent for Schroer and Wright, who are generally subsumed within the mass "individual defendants." *See, e.g.*, CC ¶¶ 181(e), 179(f); *see also Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 364–65 (5th Cir. 2004) (holding corporate officers may not be held responsible solely based on their titles, even where their day-to-day involvement is pleaded).

16

fact reached Defendants. *See Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 984 (5th Cir. 2019) (no scienter when defendant presented "demonstrably false" well data that "would have been very easy to check," absent facts demonstrating he "knew of these errors at the time"). The Opposition's insistence that "regular access" to data equates to scienter, *e.g.*, Opp. 33 n.29, is wrong. *Del. Cty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2022 WL 112029, at *13 (S.D. Tex. Jan. 12, 2022) ("[P]leading that a defendant had access to internal information that contradicted that individual's public statements is not enough."); *Rougier*, 2019 WL 6111516, at *12 (rejecting "general claim about the existence of corporate reports that reveal contrary information").[18]

### 3.    The oft-rejected "core operations" theory has no bearing here.

The "core operations" doctrine is a rare exception to the scienter requirement whereby in extraordinary "special circumstances," courts permit an inference that executives "must have known" certain facts. *Nathenson*, 267 F.3d at 424–25. The claim that "[c]ourts in this Circuit frequently apply a 'core business exception' to scienter," Opp. 32, is incorrect. "The Fifth Circuit and other courts have been reluctant to apply" the "limited exception to the particularized pleading required for scienter." *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 699 (S.D. Tex. 2013) (collecting cases rejecting the core operations exception).

"Under th[e] narrow exception, one must meet some combination of four considerations." *Yang v. Nobilis Health Corp.*, 2021 WL 3619863, at *3 n.1 (5th Cir. Aug. 13, 2021). "First, the company must be small. Second, the transaction at issue is critical to the company's continued vitality. Third, the misrepresentation is readily apparent to the speaker. And last, the defendants'

---

[18] The Opposition (at 31) cites *Brody v. Zix Corp.* on this access-to-data theory, but *Brody* found scienter where defendants unloaded 85.7%, 80.8%, and 86.2% of their company stock, respectively, in the six months before a corrective disclosure. 2006 WL 2739352, at *1–2, *7 (N.D. Tex. Sept. 26, 2006). The CC alleges *zero* such insider sales. *See Southland*, 365 F.3d at 369 (lack of individual defendants' stock sales at relevant time "undermines an inference of scienter").

statements are internally inconsistent." *Id.* None of those circumstances is present here.

- ***First***, with approximately 1,500 employees, Concho was not small. Ex. 23, 2018 10-K at 13; *Flotek*, 915 F.3d at 985 ("[W]e have never found special circumstances permitting an inference of scienter … when the company was large."); *Neiman*, 854 F.3d at 750 ("[W]ith over 60 employees, ATP was approximately twice as large as the companies in the cases where this court has found a 'special circumstance.'").

- ***Second***, far from "critical to the company's continued vitality," the Dominator was 3% of Concho's budget—hardly bet-the-company. CC ¶ 98.[19] That multi-well pad projects "made up roughly 90%" of Concho's budget, CC ¶ 97, is irrelevant, as the CC all but concedes it has no specific facts about Concho's broader portfolio of projects to even impute. *See* Opp. 17 n.10 (claiming that Plaintiffs "will only be able to fully investigate Concho's portfolio of projects once discovery has been completed").

- ***Third,*** the CC pleads no misrepresentation at all, much less one "readily apparent to the speaker," like the egregious, must-have-known facts in *Plotkin*, 407 F.3d at 697–98.

- ***Fourth***, the CC alleges no "internally inconsistent" statements.

As a result, this case should join the list of others refusing to apply the core operations doctrine.

### 4.    The "day-to-day" involvement allegations are non-probative.

The Opposition retreats to the CC's theory that the Individual Defendants *must* have known underlying contrary facts, given their statements and alleged involvement in Concho's "day-to-day operations." Opp. 32–33. It skips over the voluminous case law (MTD 31 & n.21[20]) rejecting the notion that a "corporate officer who repeatedly represents that he has an active and engaged role in a particular corporate initiative is charged with knowledge of all 'on the ground' facts about the initiative." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 925 n.12 (S.D. Tex. 2017), *aff'd*, 777 F. App'x 726 (5th Cir. 2019). Such allegations serve only to *confirm* a defendant believed what he said. *See Zhang Yang v. Nobilis Health Corp.*, 2020 WL 6815402, at

---

[19] *Compare Neiman*, 854 F.3d at 750 (well "projected to produce 22.5% of [company's] total output" not core operation), *with Carlton*, 184 F. Supp. 3d at 483–84 (start-up company's technology not working in "only plant," whose "success on a commercial scale determined whether [company] thrived or failed") (cited at Opp. 32 nn.26–27).

[20] Similar cases abound. *E.g.*, *Naglich v. Applied Optoelectronics*, 436 F. Supp. 3d 954, 976 (S.D. Tex. 2020) (no scienter from "close involvement in the day-to-day operation and management"); *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 916 (S.D. Tex. 2001) (rejecting "unacceptable assertion that [defendants] knew [nonpublic contrary facts] by virtue of their positions and day-to-day business activities").

18

*13 (S.D. Tex. June 25, 2020) (defendant's "presence in the office support[ed] a strong competing inference that he believed the accounts receivable were collectable"), *R&R adopted in relevant part*, 2020 WL 5512456 (S.D. Tex. Sept. 14, 2020) (Hanen, J.), *aff'd*, 2021 WL 3619863 (5th Cir. Aug. 13, 2021).

*In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712 (S.D. Tex. 2012), does not stand for a broad proposition that courts can intuit scienter from the challenged statements or alleged involvement in a corporate initiative. *BP*'s "holding" was actually "quite narrow," involving the "exceptional circumstance" in which repeated statements "show[ed] specific knowledge of a narrow and measurable aspect of [a critical] program so as to give the impression that [the speaking executive] is closely tracking the company's progress on that aspect." *Plains All Am. Pipeline*, 245 F. Supp. 3d at 925; *see also Stephens v. Uranium Energy Corp.*, 2016 WL 3855860, at *17 (S.D. Tex. July 15, 2016) (similarly distinguishing *BP*). Nothing in the CC remotely shows a speaker "focus[ed] … like a laser" on any granular fact that could give rise to scienter. *BP*, 843 F. Supp. 2d at 783.[21]

**C.    The Opposition fails to meaningfully grapple with the competing non-culpable inferences and retreats to an inapposite reckless-gamble theory.**

The Motion offered many cases (there are plenty more[22]) explaining that a scienter-negating inference exists when defendants *actually believed* what they said. MTD 29, 33–34; *see also Nobilis*, 2020 WL 5512456, at *2 (that defendants "thought the accounts were, in fact,

---

[21] The Opposition's other cases are similarly inapposite. The *Ramirez* court derived scienter from concrete motive allegations and specific emails purportedly showing the individual defendants knew of contrary cost figures. *See Nobilis*, 2020 WL 6815402, at *13 (distinguishing *Ramirez*). The *Netsolve, Inc. Sec. Litig.* court applied the quasi-core operations doctrine (inapplicable here, *supra* § II.B.3) to impute knowledge of omitted concrete, contemporaneous problems (reductions in sales to AT&T, which made up 70% of the company's revenue). 185 F. Supp. 2d 684, 688, 690, 697 (W.D. Tex. 2001).

[22] *See, e.g.*, *Callinan*, 479 F. Supp. 3d at 437 (more plausible inference was "the Individual Defendants honestly believed that the benefits of [a drug] outweighed its risks"); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 597 (S.D.N.Y. 2016) ("the most plausible inference from the facts pled is that defendants genuinely believed that the results from Study 022 demonstrated a safety advantage sufficient to support approval of" experimental drug); *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *22 (N.D. Cal. Sept. 27, 2012) (most "plausible" inference was "that defendants genuinely believed in the promise of" the experimental drug), *aff'd*, 591 F. App'x 592 (9th Cir. 2015).

collectible" was more plausible inference). Defendants did not invent "self-serving" "disputed facts" to create that inference here, *contra* Opp. 30—it came right from the CC. MTD 29 (collecting alleged "hubris" accounts). The Opposition finds no case where a § 10(b) complaint survived when the most plausible inference was in this actual-belief mold.

The Opposition bolsters this inference when it disclaims any "self-sabotage" allegations and abandons any suggestion that Defendants believed the opposite of what they said. Opp. 25, 34; MTD 32–33. But it trades that implausible inference for an inapposite one, citing *Makor Issues & Rights, Ltd. v. Tellabs Inc.* ("*Tellabs II*") for the notion that "[t]he fact that a gamble—concealing bad news in the hope that it will be overtaken by good news—fails is not inconsistent with its having been a considered, though because of the risk a reckless, gamble." 513 F.3d 702, 710 (7th Cir. 2008). That analogy unravels, as *Tellabs II* involved defendants hiding stark, already materialized "bad news," *id.*, much like the many cases distinguished above, *supra* § I.C.[23] *Tellabs II* and cases like it meet the lofty standard for pleading "severe recklessness":

> those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*E.g.*, *Spitzberg*, 758 F.3d at 681(discussed *supra* § II.B.2).

The CC's allegations of management hubris and caveated optimism in the face of employee disagreement over cutting-edge drilling advancements do not meet that high bar, which is probably why the Opposition never once cites the severe recklessness standard. *See, e.g.*, *Neiman*, 854 F.3d at 752 (rejecting severe-recklessness theory; "that others [including FEs] disagreed with

---

[23] Specifically, *Tellabs II* involved a fiber optics company touting strong, continuing demand for its 10-plus-year-old "flagship product" and its successor product, while concealing that "the bursting of the fiber-optics bubble" had been well underway, resulting in the market for the flagship product "evaporating," and the company having shipped "not a single" one of the successor products. 513 F.3d at 706–07, 709–10.

Defendants' assessments of [company's] liquidity does not indicate that Defendants' assessments were not truly or reasonably held"); *Owens*, 789 F.3d at 542–44 (same for defendants who "were aware of internal warnings regarding the MBS valuation" from CW). Nor does the Opposition explain how Concho's (a) robust warnings of the experimental (and in the Dominator's case, "aggressive") nature of its spacing tests or (b) prompt Q2 2019 disclosure of disappointing results are the least bit consistent with a "reckless gambler" aiming to conceal bad news. *See Owens*, 789 F.3d at 541 (defendants' "transparency" about "uncertainty" helped "negate[]" scienter).

Ultimately, courts routinely reject attempts to force a "reckless gamble" narrative where the more plausible inference is that individual defendants actually believed what they were saying:

- *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 273 F. Supp. 3d 650, 665, 667–68 (N.D. Tex. 2017) – Rejecting theory that "Defendants embarked on their gamble to make '1 Pier 1' a success" by "fail[ing] to timely disclose the Company's excess inventory in the reckless hope that the situation would somehow right itself," when "the more plausible and compelling inference is that defendants actually believed at the time the purchases were made that the inventory could be sold."

- *In re Grand Canyon Educ., Inc. Sec. Litig.*, 2021 WL 3491779, at *18–23 (D. Del. Aug. 9, 2021), *R&R adopted*, 2021 WL 3726014 (D. Del. Aug. 23, 2021) – Rejecting as implausible theory that defendants severely recklessly "gambled" that the Department of Education "would treat [the company] as a non-profit," when the more plausible inference was "that Defendants really believed what they were saying."

- *Barrick Gold*, 2015 WL 1514597, at *9–10 – Rejecting theory that defendants "undert[ook] the Project to 'gamble that increasing gold prices would lift this infeasible Project into reality, along with their careers,'" without pleaded facts demonstrating that they "knew the project was infeasible for the cost and schedule they reported to the public."

The Court should do the same here and conclude that the "plausible, nonculpable explanations for the defendant's conduct" are far more compelling. *Tellabs*, 551 U.S. at 323–24.

## III.   The Section 20(a) claim fails.

The § 20(a) claim fails along with the § 10(b) claims. *E.g.*, *Shaw*, 537 F.3d at 545.

### CONCLUSION

The Court should dismiss the CC with prejudice.

Respectfully submitted,

BAKER BOTTS L.L.P.


By:  */s/ David D. Sterling*
David D. Sterling
Attorney-In-Charge
State Bar No. 19170000
Federal I.D. No. 07079
Amy Pharr Hefley
State Bar No. 24046046
Anthony J. Lucisano
State Bar No. 24102118
Federal I.D. No. 3369146
C. Frank Mace
State Bar No. 24110609
Federal I.D. No. 3385915
910 Louisiana Street
Houston, Texas 77002
(713) 229-1946
(713) 229-7946 (Fax)
david.sterling@bakerbotts.com
amy.hefley@bakerbotts.com
anthony.lucisano@bakerbotts.com
frank.mace@bakerbotts.com

ATTORNEYS FOR DEFENDANTS
CONCHO RESOURCES INC., CONOCOPHILLIPS,
AS SUCCESSOR IN INTEREST TO CONCHO
RESOURCES INC., TIMOTHY LEACH, JACK F.
HARPER, C. WILLIAM GIRAUD, E. JOSEPH
WRIGHT, AND BRENDA R. SCHROER

22

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via ECF and/or electronic mail on all counsel of record on this 1st day of July, 2022.

*/s/ Amy Pharr Hefley*
Amy Pharr Hefley
