**BAKER BOTTS** L.L.P.

910 LOUISIANA
HOUSTON, TEXAS
77002-4995

TEL +1 713.229.1234
FAX +1 713.229.1522
BakerBotts.com

AUSTIN
BRUSSELS
DALLAS
DUBAI
**HOUSTON**
LONDON

NEW YORK
PALO ALTO
RIYADH
SAN FRANCISCO
SINGAPORE
WASHINGTON

February 3, 2023

VIA E-FILING

Hon. Andrew Hanen
United States District Court
515 Rusk Street, Room 9110
Houston, TX 77002

David D. Sterling
TEL: 713.229.1946
FAX: 713.229.7946
david.sterling@bakerbotts.com

Judge Sam S. Sheldon
United States District Court
515 Rusk Street, Room 7019
Houston, Texas 77002

Re:   *In re Concho Resources Inc., Sec. Litig.*, No. 4:21-cv-02473 (S.D. Tex.)

Dear Judge Hanen and Judge Sheldon:

We write in response to Lead Plaintiffs' "Notice of Subsequent Controlling Authority," filed on January 26, 2023. Dkt. 35. That 2,500-plus word letter—which reads more like a sur-reply not contemplated by the parties' briefing stipulation—tries to fit the square peg of this case into the round hole of the Fifth Circuit's recent decision in *Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corp.*, No. 21-10865, Slip. Op. (Dkt. 35-1).[1] Rather than supporting Lead Plaintiffs' claims, the letter's reliance on *Six Flags* only serves to highlight what is critically missing from the Consolidated Complaint ("CC") here.

***Falsity/Particularized Contrary Facts.*** Defendants' motion to dismiss briefing explained that there is a fundamental difference between this case—which involves statements that were either (a) unrebutted reports of past successes with large-scale projects, or (b) cautionary descriptions of Concho's "tests" that were expressly *designed* to "see inefficiencies"—and a viable securities-fraud complaint alleging that a company concealed or misrepresented already-materialized bad news or operational problems. Dkt. 29, MTD 7-8, 14-15; Dkt. 34, MTD Reply at 7-8 & n.9 (collecting and distinguishing Lead Plaintiffs' cases). *Six Flags* is another case to add to the latter, inapposite pile, as it involves statements touting steady progress on Chinese amusement-park projects over the course of 2018-19, despite particularized facts showing that the projects and their financing were *already besieged* by significant problems and delays. Such examples from *Six Flags* include:

- There were "numerous specific, serious operational problems . . . alleged." Slip. Op. at 19 n.15.

---

[1] Lead Plaintiffs' Notice (at 1) characterizes Defendants' motion to dismiss briefing as having relied heavily on the district court opinion that *Six Flags* reversed. In reality, Defendants' cited that district court opinion only twice, in footnotes, as one of 65 authorities in Defendants' reply. Dkt. 34, MTD Reply at nn. 5, 15.

**BAKER BOTTS** LLP

- 2 -                                                                 February 3, 2023

- The defendants stated that Six Flags's development partner, Riverside, had "a lot of assets" and "continu[ed] to pay" and that "financing [for the parks] [was] in place," when actually "Riverside was firing its employees, was underpaying its workers, had stopped construction, and had 'zero funds' to finance the project." *Id.* at 26.

- Former Employee ("FE") accounts alleged that "construction was so non-existent [that] 'weeds [were] growing' on the theme park portion of [one of the amusement] park[s] in February 2019." *Id.* at 28 (alterations partially in original).

- "A photo of [one of the amusement park] site[s] in April 2018 show[ed] essentially no construction." *Id.* at 10.

- Riverside had "not commissioned the 'fundamental blueprints' necessary to begin construction of the park infrastructure.'" *Id.* at 17.

The CC here contains nothing resembling that sort of clash between present, discrete factual statements and contemporaneous "specific, serious operational problems." *Id.* at 19 n.15. And, contrary to Lead Plaintiffs' insinuation, *Six Flags* has <u>nothing to do</u> with the CC's self-flagellation theory that a company's self-described "tests" and "experiments" were somehow not described in pessimistic enough terminology. Dkt. 29, MTD 16-17. *Six Flags* therefore does not salvage the unparticularized falsity narrative advanced by the CC; it only illustrates what the CC lacks.

*Safe Harbor*. *Six Flags* rejected application of the PSLRA's safe harbor to certain statements because the relevant cautionary language was either "boilerplate"—*i.e.*, it simply referred to unspecified "risks, uncertainties, and assumptions"—or did not "address[] the actual risk at issue—that the parks might be significantly delayed or fail to ever open." Slip Op. at 15-16. Lead Plaintiffs' letter declares that Concho's disclosures were similarly "boilerplate," but continues to ignore the on-point, specific disclosures that pummel the CC's omission theory:

- Concho described the Dominator as an "aggressive" spacing test designed to "jump a couple of steps down the line" and demonstrate "where [Concho would] see inefficiencies." MTD 7.

- And Concho disclosed that "drilling locations" and "estimates" associated with "tighter spacing" "*have not been fully risked* … and are inherently more speculative than proved reserves estimates." MTD 6 (emphasis added).

Pretending these disclosures do not exist does not make them "boilerplate." Indeed, if *Six Flags*'s discussion of cautionary language is instructive on any point, it is its conclusion that certain "late 2019" statements were *not* actionable because they were "adequately tempered." *Compare* Slip. Op. 27 (relying on caveat that there was a "very high likelihood going forward that we will see changes in the timing of park openings"), *with* MTD 7 (quoting statement that Dominator test was "designed" to "see inefficiencies"), *and* MTD Reply 4 (quoting statement that "[t]here's definitely more innings, there's no doubt about that").

**BAKER BOTTS** LLP

- 3 -                                                                February 3, 2023

*Puffery*. As for Defendants' alternative puffery argument involving Concho's report of "pretty good" initial Dominator results, *Six Flags* affirmed the non-actionable, puffery characterization (cited at MTD Reply 4 n.5) of the statement that "[w]e will not be stopping at 10 parks." Slip Op. 30. *Six Flags* labeled the "parks are progressing nicely" statement as non-puffery only because it "confirmed the projections previously provided by Defendants," which involved specific "projected opening dates." *Id.* at 31. The "pretty good" statement here was manifestly *not* tethered to any specific production estimates or information—in fact, Concho disclaimed such specificity by warning that it "ha[dn't] hit the kind of critical 60 days of production" from which initial production data would be derived. MTD 8. In any event, the CC critically lacks any particularized factual allegations that the Dominator's results were not in fact "pretty good" *at the time* of that statement. *Id.* at 13-14. As summarized above, the complaint in *Six Flags*, on the other hand, was rife with facts demonstrating that the amusement parks were not in fact "progressing nicely" at the time of that statement.

*Former Employee Accounts. Six Flags* broke no new ground with respect to the level of discounting necessary for FE accounts. It has long been true that "[t]he degree of discounting depends on the circumstances involved," including the "details in the description of the source and whether those details substantiate that the source has the necessary knowledge." Slip Op. 8-9. Lead Plaintiffs suggest that *Six Flags* credited FE1's (the "Director of International Construction and Project Management") account *even though* it amounted to a "conclusory assertion that there was 'absolutely no way' Six Flags could meet its projections," as the district court characterized it. Slip Op. 3, 17; MTD Reply 15 n.15 (quoting that line from the district court). Not so. The Fifth Circuit instead "disagree[d] with [the district court's] characterization of the pleadings" and proceeded to highlight the many "specific factual allegations" supplied by FE1 that contemporaneously contradicted the defendants' reports of steady progress, including specific reports that were communicated to the individual defendants. Slip Op. 17, 23. The CC in this case contains no FE account even approaching that of FE1 in *Six Flags*. Many of the CC's FEs were not in a position to offer anything more than mere speculation, still others offered only their strategic disagreements with management, and plenty more affirmed that Defendants *believed what they were saying*. MTD 26-30; MTD Reply 15-16 (collecting Fifth Circuit decisions explaining that disagreement or warnings from FEs do "not indicate that Defendants' assessments were not truly or reasonably held"). *Six Flags* did not confront—much less countenance—FE accounts such as those.

*Scienter.* For Lead Plaintiffs to compare the CC's "motive" allegations—which consist of the naked declaration that Defendants engaged in a fraudulent "endeavor in hopes of saving the Company," CC ¶ 3—as "analogous" to those in *Six Flags* is specious. Dkt. 35 at 5. *Six Flags* dealt with executives who allegedly (1) stood to receive "extraordinary bonuses" equivalent to "600% and 300% of their base salaries," and (2) continued to "conceal[] bad news" of the construction delays until their hand was forced by the company's "year-end audit." Slip Op. 21-22, 28. This case involves no such extraordinary pecuniary motive, and as the CC's own FE accounts confirm, while Defendants "could've tried hiding" the Dominator's disappointing results, they opted to be "open" and promptly and voluntarily *disclosed* those results in the quarter following the key 60 days of initial production. MTD 34 (quoting CC ¶ 154).

**BAKER BOTTS** LLP

- 4 -                                        February 3, 2023

Moreover, it is simply not true, *contra* Dkt. 35 at 5, that *Six Flags* held that mere "access to information" is sufficient to plead a strong inference of scienter. The progress "reports" in *Six Flags* were alleged to have been "*directly related* . . . to [individual defendant] Reid-Anderson and the Board of Directors." Slip. Op. at 23 (emphasis added).  This case involves no such analogous "reports" made to the individual defendants.  MTD 31; MTD Reply 16. Nor does this case involve anything resembling the fact pattern summarized above—*i.e.*, utter lack of progress and funding that starkly diverged from the defendants' statements—that *Six Flags* held would have been "readily apparent" to executives in a manner that would contribute to (but not independently support) scienter under a "core operations" type theory. *Id.* at 29. In other words, the facts alleged in *Six Flags* permitted *no* non-culpable inference that the speaking defendants believed what they were saying, much less one more compelling than the inference of fraud. In this case, however, that non-culpable inference emanates from the CC's own FE accounts and trounces any culpable inference. MTD 32-34; MTD Reply 19-21.

* * *

For the foregoing reasons, and for those given in Defendants' motion to dismiss briefing, the Court should dismiss the CC with prejudice.

Respectfully,

David D. Sterling

cc: All counsel of record via e-filing