**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  | x |  |
|---|---|---|
|  | : | Case No. 4:21-cv-02473 |
|  | : |  |
| IN RE CONCHO RESOURCES INC., | : | <u>CLASS ACTION</u> |
| SECURITIES LITIGATION | : |  |
|  | : |  |
|  | : |  |
|  | x |  |

**LEAD PLAINTIFFS' RESPONSES TO DEFENDANTS' OBJECTIONS TO**
**MEMORANDUM AND RECOMMENDATION REGARDING MOTION**
**TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I.     INTRODUCTION ................................................................................................... 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ............................................. 3

III.   STATEMENT OF ISSUES TO BE DECIDED .................................................... 4

IV.    STANDARD OF REVIEW AND LEGAL STANDARD .................................... 4

V.     ARGUMENT ......................................................................................................... 6

       A.     Judge Sheldon Correctly Credited Former Employee Allegations ......................... 6

       B.     Judge Sheldon Correctly Determined Falsity .................................................... 9

              1.     Purported Success of Large-Scale Development ..................................... 10

              2.     Lack of Technological Basis .................................................................. 11

              3.     Inflated Financial Forecasts .................................................................. 12

              4.     Portfolio Exposure ................................................................................. 14

              5.     The Complaint Adequately Pleads Material Omissions ......................... 15

              6.     The PSLRA Safe Harbor Does Not Apply ............................................ 18

       C.     Judge Sheldon Correctly Determined Scienter ................................................. 20

              1.     The Objections Mischaracterize Judge Sheldon's Analysis and
                     Conflate Facts and Evidence ................................................................. 23

              2.     Objections as to Motive and Opportunity Attack a Non-Existent
                     Legal Conclusion .................................................................................. 24

              3.     The Complaint Pleads a Reckless Gamble Theory ................................ 24

              4.     FE Accounts Contribute to a Strong Inference of Scienter .................... 26

              5.     Core Operations Is Applicable Here ...................................................... 26

              6.     The Objections Fail to Rebut Circumstantial Evidence of Scienter ........ 28

       D.     Objections Against Control Person Allegations Are Moot ................................. 30

E.     Policy Arguments Are Not Properly Before the Court ........................................30

VI.     CONCLUSION ...............................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002) ....................................................................................... 25

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
827 F.3d 1229 (10th Cir. 2016)................................................................................... 25

*In re Apache Corp.*, 2022 WL 4277350 (S.D. Tex. Sept. 15, 2022) ................................. *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 4

*Asher v. Baxter Int'l Inc.*,
377 F.3d 727 (7th Cir. 2004) ....................................................................................... 24

*Berger v. Compaq Computer Corp.*,
1999 WL 33620108 (S.D. Tex. Dec. 22, 1999)....................................................... 19

*In re BP p.l.c. Sec. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012)....................................................................... 23

*Brody v. Zix Corp.*,
2006 WL 2739352 (N.D. Tex. Sept. 26, 2006)......................................................... 29

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
497 F.3d 546 (5th Cir. 2007) ......................................................................................... 6

*Cupit v. Whitley*,
28 F.3d 532 (5th Cir. 1994) ........................................................................................... 4

*Fitzpatrick v. Uni-Pixel, Inc.*,
35 F. Supp. 3d 813 (S.D. Tex. 2014)...................................................................17, 24

*Frank v. Dana Corp.*,
646 F.3d 954 (6th Cir. 2011) ....................................................................................... 30

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
514 F. Supp. 3d 942 (S.D. Tex. 2021)....................................................................... 15

*In re Guess?, Inc. Sec. Litig.*,
174 F. Supp. 2d 1067 (C.D. Cal. 2001)..................................................................... 25

*Hall v. Rent-A-Center, Inc.*,
2017 WL 6398742 (E.D. Tex. Oct. 19, 2017) ............................................................ 6

*In re ITT Educ. Servs., Sec. Litig.*,
  34 F. Supp. 3d 298 (S.D.N.Y. 2014) ................................................................. 29

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
  2015 WL 7760201 (W.D. Tex. Dec. 1, 2015) ...................................................... 9

*In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*,
  2014 WL 585658 (S.D.N.Y. Feb. 14, 2014)........................................................ 30

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ...................................................................4, 5, 9

*MicroCapital Fund LP v. Conn's Inc.*,
  2019 WL 3451153 (S.D. Tex. July 24, 2019)...................................................... 25

*Nathenson v. Zonagena, Inc.*,
  267 F.3d 400 (5th Cir. 2001) ........................................................................... 5

*Neiman v. Bulmahn*,
  854 F.3d 741 (5th Cir. 2017) .......................................................................... 24

*In re Netsolve, Inc. Sec. Litig.*,
  185 F. Supp. 2d 684 (W.D. Tex. 2001) .............................................................. 23

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023) ................................................................... *passim*

*Oppenheim Pramerica Asset Mgmt. S.A.R.L. v. Encysive Pharm., Inc.*,
  2007 WL 2720074 (S.D. Tex. Sept. 18, 2007) .................................................... 25

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) .......................................................................... 24

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
  2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020).................................................... 11

*Plotkin v. IP Axess, Inc.*,
  407 F.3d 690 (5th Cir. 2005) .....................................................................28, 30

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018)...........................................................18, 29

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) .......................................................................... 16

*Rougier v. Applied Optoelectronics, Inc*,
  2019 WL 6111516 (S.D. Tex. Mar. 27, 2019)................................................... 9, 16

iv

*Smith v. Reg'l Transit Auth.*,
  756 F.3d 340 (5th Cir. 2014) ....................................................................... 11

*Spitzberg v. Houston Am. Energy Corp.*,
  758 F.3d 676 (5th Cir. 2014) .................................................................... 8, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................... 5, 21

*In re TETRA Techs., Inc. Sec. Litig.*,
  2009 WL 6325540 (S.D. Tex. July 9, 2009)................................................. 17

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
  273 F. Supp. 3d 650 (N.D. Tex. 2017)......................................................... 25

*In re Venator Materials PLC Sec. Litig.*,
  547 F. Supp. 3d 624 (S.D. Tex. 2021)........................................................... 29

*Xiongen Jiao v. Ningbo Xu,*
  2020 WL 411060 (S.D. Tex. Jan. 24, 2020)................................................. 23

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................... 5

28 U.S.C. § 636................................................................................................. 4

Lead Plaintiffs respectfully submit this Response in opposition to Defendants' Objections ("Objections"; ECF No. 41) to the Report and Recommendation of Magistrate Judge Sam S. Sheldon ("Report"; ECF No. 38).[1]

## I.       INTRODUCTION

In the words of Milton Friedman, "there is one and only one social responsibility of business—to use its resources and engage in activities designed to increase its profits so long as it stays within the rules of the game, which is to say, engages in open and free competition without deception fraud." Milton Friedman, *A Friedman Doctrine—The Social Responsibility of Business Is to Increase Its Profits*, N.Y. TIMES, at SM17 (Sept. 13, 1970). Defendants ignored this axiom when they recklessly gambled billions of dollars on highly risky and experimental production techniques that included aggressive well-spacing without disclosing the true nature of the risk to investors. Blinded by the windfall they would sow *if* this wager succeeded, Defendants leveraged trust based on Concho's historical risk management and capital discipline by touting "large-scale development" as based on the culmination of a gradual learning process (*e.g.*, ¶¶33, 34, 225, 231, 249, 283). Large-scale development, or manufacturing mode, was marketed as such a sure thing, that Defendants used it to justify the multi-billion-dollar acquisition of RSP Permian (¶¶207-10).

Defendants further clouded the narrative by falsely casting certain projects as discrete "test[s]" scattered across Concho's acreage, including the Dominator (*e.g.*, ¶294). In reality, the only difference between the Dominator and Concho's other large-scale development projects was its size. Nearly all of Concho's Class Period undertakings were experimenting with highly risky

---

[1]     Citations to paragraphs ("¶") refer to the Consolidated Complaint for Violations of the Federal Securities Laws ("Complaint"). ECF No. 25. "Defendants" refers to Concho Resources Inc. ("Concho" or the "Company"), ¶21; ConocoPhillips, as successor-in-interest to Concho, ¶22; Timothy A. Leach ("Leach"), ¶23; Jack F. Harper ("Harper"), ¶24; C. William Giraud ("Giraud"), ¶25; E. Joseph Wright ("Wright"), ¶26; and Brenda R. Schroer ("Schroer"), ¶27. "Individual Defendants" refers to Defendants Leach, Harper, Giraud, Wright, and Schroer. ¶28. Emphasis is added and internal citations and quotation marks are omitted throughout.

and unverified production methodologies, including tightly spaced wells (¶¶91-97). Indeed, the "theme" of 2018 was to push the limits of well-spacing by any means necessary (¶¶75, 76). COO Giraud, an attorney "with close to zero field experience as anyone could have" (¶115), had been given free reign and irreparably committed capital to this reckless gamble. Defendants ignored risks by paying no heed to protests from "technical staff that designed and executed the Dominator project" (¶74) that Concho was "conscious[ly]" under-risking the Dominator (¶81), which "was a reflection of everything" during the Class Period (¶91). In so doing, Defendants caused Concho to overstate its production forecasts (¶87).

Concho's large-scale development was a jaw-dropping flop. After a year and a half of touting the "inflection point" of large-scale development (¶¶242, 245) and weeks after claiming positive results from the Dominator and other projects and raising guidance accordingly (¶¶292-96), Defendants were forced to dramatically scale back current and forecasted production without a parallel reduction in Concho's budget due to tight well-spacing (¶¶298-300; 302-04). According to Defendants, Concho would not see a return to capital efficiency until sometime in 2020 (¶310). While Defendants tried to use the Dominator as a scapegoat, spacing issues were undeniably pervasive given they disclosed Concho would *revert* to wider well-spacing for *all* future projects (¶316). Finally, Defendants disclosed a 16% reduction in Concho's proved reserves directly attributable to this failure (¶315). Concho shares plummeted and never recovered, directly contributing to Concho's later acquisition for ~25% of its prior value (¶¶317-19).

The Motion to Dismiss ("Motion") (ECF No. 29) relied upon a competing factual narrative and impermissible inferences. It ironically cast the Complaint's factual allegations as conclusory while pointing to a "spreadsheet of conclusions" to rebut falsity. Report at 28 n.11. The Motion insinuated that the duty to tell the full truth is limited to good news insofar as disclosing the

2

Company's true risk profile would amount to "self-flagellation." Instead of attacking the Complaint's scienter allegations through the requisite lens of holistic review, the Motion attacked each allegation in isolation, including attempts to heavily discount former employee ("FE") accounts contrary to Fifth Circuit law. Hubris and severe recklessness are mutually exclusive, the Motion averred, as anything short of smoking gun evidence of fraud is fatal to pleading scienter.

Defendants' arguments did not sway Judge Sheldon. The 49-page Report directly followed Fifth Circuit law in reaching the conclusion this matter should move past the pleading stage. The sprawling Objections now ungracefully seek a complete do-over of the Motion. Regardless, the Objections' attempt at a second motion to dismiss are unavailing, including pearl-clutching "warnings" that should this case proceed to discovery, the face of American business will be forever marred. In this regard, the Objections "recall an oft-quoted adage: If the law is against you, argue the facts; if the facts are against you, argue the law; and if they both are against you, pound the table and attack your opponent." *U.S. v. Griffin*, 84 F.3d 912, 927 (7th Cir. 1996).

The gatekeeping function of the PSLRA "was not meant to let business and management run amuck to the detriment of shareholders." *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 235 F. Supp. 2d 549, 593 (S.D. Tex. 2002). Nor does the PSLRA supplant the intended flexibility of the Exchange Act, designed "to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *SEC v. W. J. Howey Co.*, 328 U.S. 293, 299 (1946). For the reasons stated herein and in the capacious submissions already before the Court, Lead Plaintiffs respectfully request that the Objections be overruled in full so this matter may proceed.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

The Complaint (ECF No. 25) alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act and SEC rule 10b-5 and seeks damages on behalf of a class of investors that

purchased or otherwise acquired Concho's common stock during the Class Period, February 21, 2018 through July 31, 2019, inclusive. Defendants filed the Motion on March 8, 2022. Lead Plaintiffs filed their Opposition to the Motion on May 20, 2022 ("Opposition"). ECF No. 33. Defendants filed their Reply in further Support of the Motion on July 1, 2022. ECF No. 34. On February 23, 2023, Judge Sheldon issued the Report recommending the Motion be denied in full. The Objections were filed on March 30, 2023.

### III.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Judge Sheldon correctly concluded that the Complaint adequately pled the material falsity of Defendants' alleged Class Period statements and omissions.

2.    Whether Judge Sheldon correctly concluded that the Complaint adequately pled Defendants' scienter.

### IV.    STANDARD OF REVIEW AND LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(C), the Court's review is limited to "those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* This review is further bounded to arguments "previously submitted"—"to the extent [the] [O]bjections refer to new evidence and arguments … they are not properly before the [C]ourt." *Gentry v. Hamilton-Ryker IT Sols., LLC*, 2022 WL 889276, at *1 (S.D. Tex. Mar. 25, 2022). Arguments that could have been raised before the magistrate judge but were raised for the first time in objections before the district court, are deemed waived. *See Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994).

Motions to dismiss "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Aside from scienter, the elements of a 10(b) claim are assessed

4

under "the usual contours of a Rule 12(b)(6) ruling," where courts must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor." *Lormand*, 565 F.3d at 232, 239. "[P]leading securities fraud do[es] *not* require a plaintiff to plead evidence." *Budde v. Glob. Power Equip. Grp., Inc.*, 2018 WL 4623108 at *4 (N.D. Tex. Sept. 26, 2018); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 n.5 (2007) (rejecting any standard which would "transpose to the pleading stage the test that is used at the summary judgment and judgment-as-a-matter-of-law stages").

Falsity must be pled with particularity, 15 U.S.C. § 78u-4(b)(1), meaning a complaint need *only* specify the statement, identity of the speaker, when and where the statement was made, and explain why the statement was false and misleading. *See Nathenson v. Zonagena, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001) (equating PSLRA particularity standard to Rule 9(b)); *see also In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003) (Rule 9(b) particularity "means the who, what, when, where, and how: the *first paragraph* of any newspaper story") (emphasis in original). "[A] duty to speak the full truth arises when a defendant undertakes a duty to say anything." *Lormand*, 565 F.3d at 248-49. Even the literal truth can be actionable where it omits material facts. *See In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 747 (S.D. Tex. 2012).

Scienter allegations must be analyzed "holistically"—individual allegations cannot be "scrutinize[d] … in isolation." *Tellabs*, 551 U.S. at 310. Such allegations "*need not be irrefutable*, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences." *Lormand*, 565 F.3d at 251-52. The inference need *only* be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged," and "a tie favors the plaintiff." *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 683-84, 686 (5th Cir. 2014). Scienter is alleged through

5

intentional misconduct *or* recklessness. *Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421609 at *7 (S.D. Tex. Apr. 13, 2021).

## V.    ARGUMENT

Judge Sheldon correctly determined that the Complaint should be sustained because it adequately alleged the material falsity of Defendants' Class Period statements and because, assessed holistically at the pre-discovery motion to dismiss stage, sufficiently pled that such statements were at minimum made with severe recklessness. The Objections should be overruled in full.

### A.    Judge Sheldon Correctly Credited Former Employee Allegations

The Fifth Circuit has recently clarified that any discount applied to confidential sources "does not mean unfettered discretion to discard." *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 208 (5th Cir. 2023). "Courts may rely on assertions from confidential sources if the person is described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Id.*; *Barrie v. Intervoice–Brite, Inc.*, 397 F.3d 249, 259 (5th Cir. 2005) (same); *Hall v. Rent-A-Center*, 2017 WL 6398742, at *28 (E.D. Tex. Oct. 19, 2017) (same).

Confidential sources are adequately described where the complaint alleges "job descriptions, individual responsibilities, and specific employment dates." Report at 19 (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 552 (5th Cir. 2007)). As applied, Judge Sheldon found that the FE descriptions, which included job descriptions, responsibilities, and periods of employment, were sufficient. *Compare Id.* at 17-19 (providing individual summaries for each FE derived from allegations in Complaint), *with Six Flags*, 58 F.4th at 208-09 (FE described as "Six Flags International's Director of International Construction

6

and Project Management from May 2018 through September 2019," "responsible for overseeing the construction of the China parks and reporting internally on their progress").

Substantively, courts look to indicia such as the "detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, [and] the coherence and plausibility of the allegations." *Six Flags*, 58 F.4th at 209 n.11. In assessing the substance of the allegations here, Judge Sheldon followed *Six Flags*, finding that "[t]he Complaint's details about the responsibilities of FE-1, 2, 3, 4, 7, 8, and 9's positions are directly relevant to the events at issue in this case and their roles substantiate that those FEs would have the necessary knowledge for minimally discounting their anonymity." Report at 19-20.

> Specifically, the Report found:
>
> The Complaint's FEs establish that the risks and lack of technological basis for the transition to manufacturing mode were viewed negatively by the company's technical teams for a lack of a technical, data-driven, foundation. Their accounts show that large-scale development projects were not tests, as the majority of the company's budget and resources were allocated to the projects. Their accounts also show the Individual Defendants had access to databases which properly quantified the actual risks associated with large-scale, tightly spaced, development but the data was not used in financial projections. The FEs corroborate that the Individual Defendants were regularly and repeatedly warned of the risks by senior technical staff in project and financial meetings, but the warnings were ignored and omitted from the company's statements to the market.

*Id.* at 20. This analysis included noting the corroborating accounts between the multiple FEs—a factor lacking in *Six Flags*. 58 F.4th at 208-09 (applying "minimal" discount **despite** "lack of corroborating witnesses").

Nothing about Judge Sheldon's conclusion is foreign to Fifth Circuit case law, including recent oil and gas cases. *See, e.g.*, *In re Apache Corp.*, 2022 WL 4277350, at *2, *7 (S.D. Tex. Sept. 15, 2022) (crediting FE statements that defendants "lacked crucial data they needed to support impressive claims about … production capabilities" where they "willfully ignored data");

7

*Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, 2021 WL 1416025, at \*7 (S.D. Tex. Apr. 14, 2021) (crediting "the accounts of two [FEs] who worked as production engineers … that [defendants] departed from industry standards by … drilling wells too close together"). The Motion, however, initially argued that FE allegations, without exception, "must be heavily discounted." Motion at 26. Obviously, such approach has been expressly admonished by the Fifth Circuit in *Six Flags*. Tellingly, the Objections make no attempt to distinguish *Six Flags* when arguing the Court should reject all FEs (aside from FE-1) "out of hand." Objections at 18-20.

Extrapolating from the Objections' bulleted gripes, unless the FEs were directly facing the Individual Defendants (which FE-1 was ¶¶77-79, 81, 86, 87), then the allegations to which they are tied have no merit. Objections at 19-20. This is simply not the law; not all FEs need be created equal where they corroborate a complaint's allegations. *Cf. Spitzberg*, 758 F.3d at 682, 684-85 (reversing dismissal after crediting allegations by confidential witness who had no interaction with individual defendants). Regarding FE-1, the Objections take issue that the Complaint didn't provide an exact temporal accounting for the events alleged. Objections at 20-21. Not the law. *Cf. Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 268-69 (3d Cir. 2009) (plaintiffs not required to "point to any particular document or conversation … during the class period"). There need only be "contemporaneous details of [FE-1's] knowledge," which here should be obvious given FE-1's numerous factual allegations.[2] *Six Flags*, 58 F.4th at 209.

---

[2]    *See, e.g.*, ¶¶75, 97, 101 ("objective for 2018" was to find limits of well-spacing by any means necessary and such projects accounted for 90% of 2018 budget, yet most projects underperformed); ¶¶77, 79 ("Concho began planning Dominator in August 2017" and failed to apply the correct risk profile from the outset; thereafter attended budget meetings along with Defendant Giraud where risks were discussed); ¶88 (pointing to specific 2018 statements regarding risk management as false and misleading when made); ¶100 (majority of projects executed in 2018 and 2019 failed expectations); ¶¶101-03 (pointing to specific 2019 statements regarding positive production results as false and misleading when made); ¶105 (describing weekly Tuesday executive meetings, which included the Individual Defendants).

8

B.    **Judge Sheldon Correctly Determined Falsity**

The falsity allegations fall into four categories of statements: (i) the success and benefits of large-scale development (Report at 20-22); (ii) the technological justification therefor (Report at 22-23) (iii) production guidance (Report at 22-24); and (iv) portfolio exposure (Report at 25-26). The gloss on all these statements is that when touting the transition to manufacturing mode, Defendants were under a duty to tell the full truth and breached said duty by failing to disclose a litany of risks, unknowns, and contrary data associated therewith.

Treating all well-pled facts as true and affording every inference to Lead Plaintiff—as is required at the pleading stage—Judge Sheldon determined the Complaint met its burden under Rule 9(b) and the PSLRA by "identif[ying] each alleged misleading statement, the individual speaker, the date when the statement was made, the context the statement was made, and why the statements [were] misleading," and that the "explanations for the falsity of Defendants' statements logically correspond[ed] with each alleged misstatement" Report at 36; *see also Nathenson*, 267 F.3d at 412 (who, what, when, where, why particularity standard); *Rougier v. Applied Optoelectronics, Inc*, 2019 WL 6111516, at *8 (S.D. Tex. Mar. 27, 2019) (same).

With regard to materiality, Judge Sheldon concluded that "[o]nce … [D]efendants engaged in public discussions … they had a duty to disclose a 'mix of information' that is not misleading," Report at 37 (quoting *Six Flags*, 58 F.4th at 217), and the "omission that the transition to manufacturing mode was more of a shot in the dark technologically which ratcheted up the risk the company historically took on [was] material." *Id.* (citing *Lormand*, 565 F.3d at 248); *see also KB Partners I, L.P. v. Pain Therapeutics, Inc.*, 2015 WL 7760201, at *9 (W.D. Tex. Dec. 1, 2015) (statements actionable where they were pled as "careful elisions reassuring the market not to worry and minimizing the risk[s]" which "paint[ed] an incomplete and misleading picture" of the Company).

9

The Objections deal in incredulous hyperbole and competing inferences. They contend that the duty to tell the full truth is illusory. They chide Judge Sheldon for adopting the Complaint's factual narrative and "cherry pick[ed]" statements while disingenuously offering cherry picked rebuttals. The Objections cry particularity and baselessly cast clear factual allegations as conclusions. They fruitlessly resurrect the safe harbor defense in an attempt to cure the Motion's fatal notice pleading. Of note, the Objections have abandoned arguments related to puffery and opinion statements. Neither the Motion nor the Objections challenged the materiality of the alleged omissions. Such argument is deemed waived. *See Cupit*, 28 F.3d at 535.

### 1.    Purported Success of Large-Scale Development

As observed in the Report, the Complaint adequately "allege[d] Defendants declared the transition to large-scale development as a success and touted its benefits despite having no basis to assert it would work as intended." Report at 21-22 (citing ¶¶172, 192, 195, 210, 213, 216, 219, 235, 241, 246, 256, 261, 263, 276, 279, 297). Specifically:

> [T]he Complaint alleges that when describing the early success of the transition to manufacturing mode, as verified by FEs, Defendants omitted the initial and ongoing cost and risk which threatened overall "production, capital efficiency, growth, asset longevity, and overall financial health." The FE accounts indicate that the initial results of the Dominator Project and other manufacturing mode projects were under company expectations from the start. Plaintiffs provided their own analysis showing that the Dominator was significantly underperforming as compared to other wells in the same region.

*Id.* at 34-35.

Here, the Objections contend statements that initial Dominator results were "pretty good" were truthful when made. Objections at 12-13. The Complaint alleges the opposite, that "[Concho] had pressure gauges in the wells[,]" *i.e.*, "live data from each well," (¶101) which *immediately* showed "pressure degradation" for the Dominator and "the lack of production and the amount of draw down was alarming" (¶¶96, 101). In this regard, the Objections harm more

10

than help Defendants by raising a factual dispute unripe for adjudication at the pleading stage. *See Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) ("disputed questions of fact are anathema to 12(b)(6) jurisprudence"); *see also BP*, 843 F. Supp. 2d 712, 773 (declining to resolve factual dispute at motion to dismiss); *Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, at *16 (S.D.N.Y. Sept. 27, 2020) ("[d]efendants' alternative chronology … presents a factual dispute that cannot be resolved on a motion to dismiss").

### 2.    Lack of Technological Basis

The Report upheld allegations that "Defendants falsely stated to investors that manufacturing mode was the product of gradual learning and verified techniques despite being experimental." Report at 22-23 (citing ¶¶ 172, 177, 192, 195, 200, 210, 213, 226, 232, 246, 248, 297). Specifically:

> [T]he Complaint alleges that Defendants abandoned proven methodologies in favor of the "manufacturing" technique despite the technique lacking any technical basis, as confirmed by FEs. The Complaint further alleges that Concho's shift to manufacturing mode was not as gradual as investors were told. Instead, Plaintiffs allege that Defendants actions did not correspond with the Company's previous historical approach to learning and mobilizing accrued data.

*Id.* at 35.

The Objections contend that the Dominator and several other projects were referred to, from time to time, as "tests," therefore no falsity. Objections at 6-7. According to the Objections, "test" and blind wager are synonymous, insofar as using the term "test" anesthetizes all other statements regarding the genesis of, basis therefor, current status, and any purported benefits, of the transition to manufacturing mode. Not so. As alleged, Defendants' statements materially

11

misrepresented that any "tests" were pushing the limits of **proven** methodologies which had repeatedly been touted as the basis for Concho's financial and production forecasts.[3]

Beyond the above, the Objections challenge three statements based on a competing inference of how investors would have interpreted such statements.[4] Objections at 6-7 (citing ¶¶193, 224-25). The competing inferences averred, however, are nonsensical. "Later stage of innings" and "more innings" are not contradictory, and "come through discovery" was directly in response to questions regarding manufacturing mode. ¶225. As far as manufacturing mode not being a "dramatic change," that's **exactly** what Defendant Giraud represented (¶224), same with "successfully made [the] transition" to manufacturing mode as to Defendant Harper (¶193).

### 3.      Inflated Financial Forecasts

The Report concluded that the Complaint adequately "allege[d] Defendants issued non-risk adjusted production forecasts despite internal understanding that the forecasts were inaccurate and overstated." Report at 23-25 (citing ¶¶ 173, 175, 179, 183, 187, 192, 241, 254, 263, 267, 269, 272). Specifically:

> [T]he Complaint alleges that Defendants disregarded the risks associated with largescale development and aggressively spaced wells. Specifically, the Complaint alleges a conscious decision by Giraud to apply an inapplicable 2-well risk profile to the Dominator despite the heightened risks of a 23-well project. Plaintiffs support their allegations with numerous FE accounts and post-Class Period events. Further, Plaintiffs allege Concho failed to model for degradation due to tight well spacing, an unheard of practice in the oil and gas industry, which directly impacted the company's financial disclosures. Plaintiffs allege this practice applied to the majority of the Class Period projects. Thus, the Complaint alleges that Concho's financial forecasts were unreasonably high and misleading.

---

[3]      Such argument also ignores the materiality of the alleged omissions (*infra* at Section V.B.5), as well as allegations that calling such projects "tests" was further misleading as these were not isolated experiments, but emblematic of the Company's entire Class Period project focus (*infra* at Section V.B.4).

[4]      The contention that Judge Sheldon didn't view the "context" of the highlighted statements is lacking justification given the Complaint quotes each statement fully, and to the extent Defendants wanted to add further "context" they did so in their appendix and submission of hundreds of pages of Exhibits.

*Id.* at 35; *see also Alta Mesa*, 2021 WL 1416025, at \*8 (actionable where company's projections were allegedly inflated based on "distorting effect of the company's unconventional drilling practices" which "depart[ed] from industry standards").

Aside from a defunct-from-the-start safe harbor defense, discussed *infra*, the Objections advance forced "contextual" inferences for a handful of statements. For example:

- "[P]ortfolio approach to mitigate risk": September 5, 2018 statement by Defendant Leach referring to a **Company-wide** philosophy of risk management and spoken moments after touting the "inflection point … driven by manufacturing mode," and further stating that Concho was a "stable ship" that allowed Defendants to "manage risk." ¶¶241-43.

- "[S]trategy was the same" & "aware of at the time": February 21, 2018 statements by Defendant Leach that nothing had changed from Concho's historical approach to risk management and that guidance reflected all available data, to which Defendant Harper added the "transition to large-scale [development]… will **continue** to drive growth, innovation and efficiencies." ¶¶184-90.

- "[E]xpect more of the same": May 5, 2018 statement by Defendant Harper regarding 2018 budget that Concho would continue its historical approach to capital discipline. ¶197.

- "[B]aked in risk": October 31, 2018 statement by Defendant Giraud emphasizing that 2019 and 2020 production outlook was based on "internal modeling" and "consistent with what … [was] expect[ed]," creating false impression that all available data had been "baked into" forecasts. ¶262.

- "[P]retty conservative": February 20, 2019 statement by Defendant Harper stating "*we have historically been pretty conservative on the way we've accounted for inventory and well spacing, and I'm thankful that, that's been our view up till now*," creating false impression Concho was still abiding by historical norms regarding well spacing. ¶283.

Respectfully, the statements say what they say, regardless of any inferences afforded to Lead Plaintiffs. Defendants repeatedly assured investors that the Company had not deviated from its historical approach regarding risks and well-spacing and that guidance was based on everything they were aware of at the time, including internal modeling. These statements are directly contradicted by the allegations in the Complaint. That is sufficient for the pleading stage.

13

### 4.   Portfolio Exposure

Judge Sheldon concluded that the Complaint sufficiently alleged falsity as to statements "that large-scale development projects were dispersed when exposure was company wide." Report at 25-26 (citing ¶¶ 172, 181, 192, 198, 202, 226, 244, 261, 284). Specifically:

> [T]he Complaint alleges that despite Defendants' regular representations that risk was spread throughout the company's portfolio of assets, projects with risky well-spacing were widespread. Plaintiffs further allege Concho lacked low risk projects to balance the increase in risk from the transition to manufacturing mode, which was the opposite of its historical practice, resulting in Concho's risk profile changing. Plaintiffs allege, and FEs confirm, Concho threw the vast majority of its budget at projects with aggressively spaced wells. The Complaint alleges that it was false and misleading that Defendants described the aggressive well-spacing technique as "tests" without equating that large-scale development and aggressive well-spacing were one and the same. Plaintiffs argue even if the term "test" was literally true when spoken, it misled investors about the full truth of the company's exposure to risk. Plaintiffs were unaware of the "anticipated magnitude" of the risks Concho was exposed to should the transition to manufacturing mode fail.

*Id.* at 35-36.

The Objections make no attempt to explain away Defendants' post-Class Period admissions. Instead, they aver the Complaint fails to plead the falsity of (undefined) "past success[es]" with particularity, Objections at 8-9, and accuse the Complaint of extrapolating Dominator-specific criticism to the entire portfolio based on FE-1's statements. *Id.* at 10. Yet by Defendants own admission, aggressive well-spacing was endemic throughout Concho's portfolio to the point of requiring Company-wide reversionary measures. *See* Report at 25. This, coupled with the FE allegations, is sufficient at the pleading stage.[5] Indeed, Lead Plaintiffs were not required to plead evidence, *Glob. Power*, 2018 WL 4623108, at *4, the current inquiry is whether

---

[5]   The Objections try to cast analyst downgrades and shock as proof of "fraud by hindsight." Objections at 7. These are primarily pled, however, to support loss causation. ¶¶411-12. Otherwise, such reactions are pled to illustrate that analysts who closely followed the Company were stunned that Defendants' prior communications that Dominator "was not representative of the company's development plans … were not consistent" with reality. ¶ 306. *Cf. Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009) (analyst questions and responses thereto supported finding of fraud).

14

the Complaint "entitle[s] [Lead] Plaintiffs to discovery," not whether the Complaint has made every potential allegation. *Alta Mesa*, 2021 WL 1416025, at *11.

### 5. The Complaint Adequately Pleads Material Omissions

"[U]nder Rule 10b-5, a duty to speak the full truth arises when a defendant undertakes a duty to say anything," *Six Flags*, 58 F.4th at 217, which duty is "measured not by literal truth, but by the ability of the statements to accurately inform rather than mislead," *i.e.*, whether any omitted information was material. *Lormand*, 565 F.3d at 248. This duty was recently upheld in *Six Flags*, which centers on allegations that the defendants "misled investors by projecting unrealistic or impossible timelines" regarding the construction of new theme parks in China, supported by post-class period disclosures and the corroborating statements of a single FE. *See Six Flags*, 58 F.4th at 204. In *Six Flags*, because the defendants failed to disclose the material risks the park openings would be delayed or fail entirely, their "positive statements … contained actionable omissions." *Id.* at *17.

Just like *Six Flags*, the omissions here are simple: undisclosed risk. When speaking on manufacturing mode, Defendants failed to disclose that Concho's slated portfolio of upcoming developments represented an unverified combination of experimental methodologies, including tightly spaced wells, which exposed Concho to an aberrational concentration of risk. Defendants abandoned their historical approach to risk management and capital discipline, and in so doing, caused Concho to issue artificially inflated production forecasts. By failing to disclose "that there was no reliable data to support the[ir] wildly enthusiastic claims," *Apache*, 2022 WL 4277350, at *4, Defendants created an "impression of a state of affairs" materially different than the "one that actually existed." *Carlton v. Cannon*, 184 F. Supp. 3d 428, 468 (S.D. Tex. 2016); *see also Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 956 (S.D. Tex. 2021) (must "disclose material, adverse facts that affect the validity" of statements).

15

The Motion's prime argument was that because Defendants called Dominator a "test," no information was omitted from their statements. Motion at 16-17. But this hand waving ignored the marquee materiality inquiry and the Complaint's allegations. As determined by Judge Sheldon, factual statements regarding the benefits of large-scale development generally, the Dominator specifically, and financial forecasts associated therewith, omitted material information that Concho had deviated from historical norms by devoting nearly all of its budget to experimentation. Report at 37. These statements, "understood as a whole, would mislead a reasonable potential investor" based on the alleged omissions. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 824 (S.D. Tex. 2017); *see also Applied Optoelectronics*, 2019 WL 6111516, at *10 (sustaining fraud claims where "statements projected a promising picture of increased revenues and manufacturing capacity while omitting material information").

The Motion's "self-flagellation" argument relied on an inapposite case for the proposition that the full truth is limited to "historical" or "factually correct" information. Motion at 16-17 (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003). Yet *Azurix*, which predates *Lormand*, dealt with "generalized, positive statements," *i.e.*, immaterial puffery. 332 F.3d at 869. This is an entirely different rule of law, and the Objections do not challenge any findings related to puffery. Further, the same paragraph in *Azurix* comports with *Lormand* by clarifying that such rule only applies where "public statements ***are reasonably consistent with reasonably available data***," which as alleged, was not the case.[6] *Id.*; *see also* Report at 43 ("Defendants had the true data but were not applying it."). Regardless, *Six Flags* has reaffirmed that the duty to tell the full truth applies equally to information an investor might deem unfavorable.

---

[6]    As alleged, the Individual Defendants had access to *Aries*-tracked and quantified data that Concho's manufacturing mode carried increased, significant risks compared to individual, isolated wells, ¶¶81-85, 96, but Defendants consciously chose to ignore those risks despite repeated warnings from the FEs and their teams. ¶¶87, 113, 117.

16

Ultimately Judge Sheldon refused to endorse the Motion's argument "that disclosing that the transition to manufacturing mode employed an unverified and risky technique would go beyond the company's duty under securities laws," finding that it "muddie[d] what is required … to survive a motion to dismiss." Report at 36-37. Relying on *Six Flags* and *Lormand*, Judge Sheldon concluded that the Complaint sufficiently pled the alleged omissions were material:

> Plaintiffs have alleged sufficient facts to show that Defendants' omission that the transition to manufacturing mode was more of a shot in the dark technologically which ratcheted up the risk the company historically took on is material. A reasonable investor would have viewed the widespread risk increase, lack of a measured technological basis for the risk increase, and inflated financial forecasts without proper reflection of that risk, as significant facts to alter the total mix of information available.

*Id.* at 37.

Instead of objecting to whether such omissions were adequately pled as material—the basis of Judge Sheldon's determination—the Objections continue to advocate for a disclosure duty so flimsy it invokes the regime of *caveat emptor* the federal securities laws were designed to eliminate.[7] The Objections raise factual disputes not appropriate for resolution on a motion to dismiss as well as impermissible inferences to rebut the Complaint's allegations. For instance, that this was a mere "strategic disagreement with management," as opposed to a "conscious decision … to use Concho's historical risk profile numbers in forecasting" (*supra* Section V.B.3),[8] or to refute allegations Defendants immediately learned production was subpar (*supra* Section V.B.1). Objections at 13-15. The Objections conclude it was "inexcusable" Judge

---

[7]    The Objections' attempts to question case law relied on by Judge Sheldon here fall flat. *See, e.g.*, *Apache*, 2022 WL 4277350, at *2, *7 (fraud claims sustained based on allegations defendants "**lacked crucial data they needed to support impressive claims about … production capabilities**" because they "**willfully ignored data**"); *In re TETRA Techs., Inc. Sec. Litig.*, 2009 WL 6325540 (S.D. Tex. July 9, 2009) (cited to in the Report at 28-29 for rule of law related to safe harbor defense); *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 799–800 (S.D. Tex. 2012) (same).

[8]    Contrary to the Objections, however, "[b]ecause [FE-1]'s statements address the circumstances underlying the … forecasts, they do not merely indicate a disagreement between the parties over the validity of the … forecasts as defendants argue; but, instead, support [Lead] [P]laintiffs' allegations that the forecasts were false when made." *Fitzpatrick v. Uni-Pixel, Inc.*, 35 F. Supp. 3d 813, 828 (S.D. Tex. 2014).

Sheldon did not dismiss any omissions-based allegations simply because Defendants called the Dominator a test, despite such contention being addressed separately in the Report. *See supra* Section V.B.4.

The Objections have conceded the alleged omissions were material, which should end the inquiry. None of the Objections have merit and should be overruled.

### 6. The PSLRA Safe Harbor Does Not Apply

The Motion failed to plead a cognizable safe harbor defense even remotely. Instead of identifying what portion of what statement was forward-looking, and to what meaningful cautionary language it applied, the Motion relied on a spreadsheet of bulleted conclusions. *See* ECF No. 29-2. This was leagues away from Defendants' burden, as "[e]ach statement that benefits from the safe harbor *must* be addressed individually," *Lormand*, 565 F.3d at 245; *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 850 (N.D. Tex. 2018) ("[c]ourts cannot apply a blanket safe harbor for all forward-looking statements but must determine how a statement is specifically and meaningfully protected by the safe harbor."). Judge Sheldon agreed, casting the appendix as a "spreadsheet of conclusions," "not properly before the Court because the Court is unable to conclude what reason applies to what portion of the statement." Report at 28 n.11. The Objections manufacture outrage in response, citing cases that other courts have found appendices "helpful."[9] Objections at 9 n.3. Helpful is not the burden here, Defendants were required to affirmatively plead defenses for each false statement and failed to do so. *See Lormand*, 565 F.3d at 245.

---

[9] Confronted with their blunder, Defendants dramatically argue that to hold them to *Lormand's* standard would "perversely incentivize overloaded complaints." Objections at 9-10 n.3. To counter: (i) allowing a spreadsheet of conclusions to carry Defendants' burden would signify that motions to dismiss can prevail on a mere notice pleading standard; (ii) Defendants were permitted to submit their appendix, the fact it was wholly lacking substance is not Lead Plaintiffs' issue; and (iii) Defendants could have practiced restraint with their "inflection point" rhetoric.

This was not the end of Judge Sheldon's analysis. Upon reviewing the statements challenged as forward-looking, he determined that statements "regarding financial projections and future performance [were] made in reference to the present strength of large-scale development and the present transition to manufacturing mode," and thus inapplicable for the safe harbor defense as "statements rely[ing] on present and historical fact":

> The identified [safe harbor] statements imply that the present transition to manufacturing mode was data-driven, finite, and predictable enough that it drove production and financial predictions quarter over quarter and year over year. Defendants' statements projected time and again an increase in production due to the current technique being employed. Defendants tied increased production to increased financial forecasts based on the purported data they gradually collected over a significant amount of time. Giraud indicated to investors they had data at the time of making the forecasts because it was baked into future projections. Defendants assured investors any current and future endeavor was consistent with its historically conservative approach. Defendants omitted material information regarding the baked in risk assumptions that inflated financial forecasts, the lack of data supporting the too tightly spaced wells, the ability to offset the risk incurred by the transition and thus the ability to weather the failure of transitioning to manufacturing mode.

Report at 28-29; *see also Six Flags*, 58 F.4th at 211 ("[M]ixed present/future statement[s] [are] ineligible for safe harbor protection.").[10]

Even assuming *arguendo* that all statements were purely forward-looking, this defense "do[es] not … provide[] a panacea for Defendants." *Apache*, 2022 WL 4277350, at \*5 (rejecting appendix of statements labelled as forward-looking). Indeed, to qualify, such statements must be accompanied by "'substantive' company-specific warnings based on a realistic description of the risks applicable to the particular circumstances." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,

---

[10]    The Objections get the law wrong that "mixing true facts into forward-looking statements does not eliminate the safe harbor." Objections at 9. In the Fifth Circuit, "statements of current or historical fact … are not protected by the PSLRA's safe harbor," *Apache*, 2022 WL 4277350, at \*4. The safe harbor is equally inapplicable to material omissions. *See Berger v. Compaq Computer Corp.*, 1999 WL 33620108, at \*14 (S.D. Tex. Dec. 22, 1999). Thus, the Objections' concession that alleged forward-looking statements contain facts should eliminate the eligibility of the safe harbor defense.

365 F.3d 353, 372 (5th Cir. 2004). Even after finding two separate reasons to reject Defendants' safe harbor defense, Judge Sheldon still "survey[ed] Defendants' highlighted warnings," "blanket warnings Defendants submitted in Concho's SEC filings," and found them "insufficient to give meaningful warnings to the thirty plus statements Defendants claim they would apply," namely the "clearly present danger that was materializing from the transition to manufacturing mode." Report at 29-30.

The Objections' struggled efforts to equalize their exemplar boilerplate risk warnings fail, especially when viewed by Defendants' after-the-fact risk warning bespoke to large-scale development and tightly spaced wells (¶313).[11] *See Lormand*, 565 F.3d at 244 ("Congress clearly intended that boilerplate cautionary language not constitute 'meaningful cautionary' language for the purpose of the safe harbor analysis.").

Finally, the Objections argue that because Judge Sheldon determined Defendants acted with **at least** severe recklessness, any forward-looking statements fail under an alternative "made with actual knowledge" prong. Objections at 27. For this to have bite, it would require an impossible cascade of events in Defendants' favor: Judge Sheldon's layers of analysis be rejected *ad seriatum*, and "at least" read as "at most." For the reasons stated, this and all other Objections related to the safe harbor defense should be overruled in full.

### C.    Judge Sheldon Correctly Determined Scienter

In assessing scienter, a court must "constantly assum[e] the plaintiff's allegations to be true." *Tellabs*, 551 U.S. at 326-27. "[T]he strong-inference pleading standard does not license the

---

[11]    Stating that some drilling locations "ha[d] not been fully risked" in the context of unproved reserves with a hypothetical reference to "tighter spacing" does not square with allegations that large-scale projects had been consciously under-risked, nor does it warn of a reduction in proved reserves. Objections at 11. Further, stating that production techniques "may result in volatility" or that could have "adverse impacts" are precisely the type of catch-all risk disclosures any publicly traded oil and gas company would include in its SEC filings. *Id.*

20

Court to resolve disputed facts at this stage of the case." *Holzwasser v. Staktek Holdings, Inc.*, 2006 WL 897746, at *4 (W.D. Tex. Mar. 30, 2006). "[T]here will rarely be direct evidence of intent to defraud, allegations of circumstantial evidence of conscious misbehavior or recklessness justifying a strong inference of scienter … will suffice*." In re Fleming Cos. Inc. Sec. & Derivative Litig.*, 2004 WL 5278716, at *11 (E.D. Tex. June 16, 2004). Allegations "need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences." *Lormand*, 565 F.3d at 251. "[A] tie favors the plaintiff." *Spitzberg*, 758 F.3d at 686.

After weighing all competing inferences, Judge Sheldon correctly determined that the Complaint "pled circumstances constituting at least severe recklessness with respect to Defendants' overstatement of its success in large-scale development serving as the basis for the transition to manufacturing mode." Report at 41-48. Specifically, that "assurances to investors regarding the nature of portfolio exposure," "confirmation of a data-driven technological basis," and "using the incorrect risk profile to develop financial forecasts," "[t]ak[en] … together … would undoubtedly present an 'obvious danger of misleading buyers or sellers of Defendants['] … securities as to the value of the company's assets.'" *Id.* Judge Sheldon accurately summarized the Complaint's fraud theory in that scienter is not established based on Defendants' belief their gamble would succeed, but that they at least recklessly disregarded the nature of such gamble. Report at 45 ("The fact that a gamble— concealing bad news in the hope that it will be overtaken by good news— fails is not inconsistent with its having been a considered, though because of the risk a reckless, gamble." (quoting *Tellabs*, 513 F.3d at 710)).

In his analysis, Judge Sheldon credited seven of the nine alleged FEs (discussed *supra* Section V.A). In particular, allegations that "Defendants were willing to conceal the true nature of risk in hopes it would pay off," for example: by "point[ing] to specific meetings where the risk

of transitioning to manufacturing mode was discussed among technical teams, reservoir engineers, management, and Giraud," that technical teams were "shocked" because Dominator "would not work," which conclusion was supported by "simulations to ensure appropriate well density," and that it was a "conscious decision" by Defendant Giraud "to use Concho's historical risk profile numbers" for Dominator despite ongoing protests from senior technical staff. Report at 41-43. Such allegations supported a "strong inference of scienter that [Defendant] Giraud at least recklessly, but more likely knowingly, used the incorrect risk profile to develop financial forecasts to mislead the public." *Id.* at 43.

With respect to scienter allegations regarding the importance of manufacturing mode to Concho's business, Judge Sheldon first noted that the Complaint did not use such allegations "as an independent basis to adequately allege scienter." Correctly highlighting that "the company's size cuts against an inference of scienter," Judge Sheldon determined that allegations still supported an inference given "the importance of manufacturing mode." *Id.* For instance, that "projects like Dominator 'made up roughly 90% of the 2018 budget at Concho,'" and "80% of its capital … in 2019." *Id.* at 44. Judge Sheldon also noted that the failure of manufacturing mode caused a 16% write down of the Company's proved reserves, and ultimately resulted in the sale of the Company for ~25% of its implied enterprise value following the acquisition of RSP Permian. *Id*. at 45. Judge Sheldon concluded that "[t]he importance of the transition and the project to the company's overall vitality supports a strong inference of scienter." Report at 46.

As to circumstantial evidence of scienter, Judge Sheldon found:

allegations regarding the Defendants' participation in day-to-day activities gives rise to a strong inference that [Defendants] Leach, Harper, Wright, and Schroer knew or were severely reckless in not knowing at the time of the 2017 and 2018 annual reports releases that the reports misrepresented the status of the company's financial forecasts, and they contained omissions that would impact investors and analysts' ability to accurately model returns.

22

Report at 46. This included allegations there were "weekly Tuesday meetings amongst the executives, including [Defendants] Giraud, Leach, and Schroer, where the Dominator was likely discussed," and the undisputed fact that Wright remained as COO until 2019 when FE-1 brought up concerns regarding the Dominator.[12] *Id.* at 45-46; *see also BP*, 843 F. Supp. 2d at 783 (defendant's "own actions as the spokesperson and champion for ... [certain] efforts weigh strongly in favor of the inference that [he] paid special attention to ... [those] efforts or, at the least, was reckless in not doing so.").

### 1. The Objections Mischaracterize Judge Sheldon's Analysis and Conflate Facts and Evidence

With no basis, the Objections attack Judge Sheldon for purportedly focusing on the "operational reasonableness" of manufacturing mode as opposed to what Defendants said. Objections at 17-18. In this regard, the Objections scold Judge Sheldon for running afoul of the "long-forbidden practice" of second-guessing company decisions. *Id.* Hyperbole aside, the Objections puzzlingly ignore the dozens of pages of analysis in the Report on precisely what Defendants said, how the Complaint adequately pled facts to allege these statements were false and misleading when made, and weighing all competing inferences of scienter. Again, the Objections aver the Complaint hasn't pled "facts." This is absurd given the Objections in the same breath argue for a competing non-culpable scienter inference—***based on facts pled in the***

---

[12]    While Judge Sheldon found there were no "direct" scienter allegations as to Defendants Wright and Schroer, based on the importance of the transition to "manufacturing mode and the parallel risk associated," *i.e.*, 90% of Concho's budget, involvement in day-to-day activities, and participation in the preparation of Concho's SEC filings, there was "strong circumstantial evidence of conscious misbehavior or recklessness on the part of those who signed the report." Report at 46-47; *see also In re Netsolve, Inc. Sec. Litig.*, 185 F. Supp. 2d 684, 697 (W.D. Tex. 2001) (scienter found where undisclosed problems should have been obvious to company executives). Relatedly, the Objections have abandoned arguments that Defendants Wright and Schroer did not "make" any statements. Nor do the Objections specifically contest any alleged false statements contained in Concho's SEC filings which were signed by Defendants Wright and Schroer. ¶¶180-83, 270-71. Thus, the "same alleged events" showing falsity "support a cogent and compelling inference of scienter" as to Defendants, including Defendants Wright and Schroer. *Xiongen Jiao v. Ningbo Xu,* 2020 WL 411060 at *1 (S.D. Tex. Jan. 24, 2020).

*Complaint*—that this was a mere "disagreement" with management.[13] The Objections' brazen attempts to muddy Judge Sheldon's analysis should be rejected.

### 2. Objections as to Motive and Opportunity Attack a Non-Existent Legal Conclusion

The motive and opportunity inquiry is but one avenue of support for scienter, albeit not required by any means. Here, as noted by Judge Sheldon, motive and opportunity is wholly unneeded for a finding of severe recklessness. Report at 40 ("a strong inference of severe recklessness does not depend on" motive and opportunity (quoting *Spitzberg*, 758 F.3d at 685)). As such, Judge Sheldon did not rely on allegations of motive and opportunity. The Objections miss this entirely, spending pages attacking a non-existent legal conclusion. Objections at 15-17.

### 3. The Complaint Pleads a Reckless Gamble Theory

According to the Objections, hubris and recklessness are mutually exclusive.[14] Objections at 27-30. Such a rule would perversely twist the recklessness inquiry. *See Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 728 (7th Cir. 2004) ("the securities laws forbid foolish frauds along with clever ones."). As alleged, Defendants determined to find the tightest optimal well spacing by any means necessary, having devoted 90% of Concho's 2018 budget to do so, while ignoring contradictory data and bucking all norms by consciously applying an incorrect risk profile. *See, e.g.*, *Alta Mesa*, 2021 WL 1416025, at *7 (sustaining fraud claims where "[defendants] departed from industry standards by … drilling its wells too close together"). Defendants ***concededly*** acted

---

[13]    As noted above, Defendants cannot retreat to their "disagreement" defense where the Complaint alleges that financial forecasts were false when made. *See Uni-Pixel*, 35 F. Supp. 3d at 828. Moreover, the cases cited by the Objections are inapposite. *See, e.g.*, *Neiman v. Bulmahn*, 854 F.3d 741, 751 (5th Cir. 2017) (no scienter where company's liquidity was a "***disclosed*** bet on future production"); *Owens v. Jastrow*, 789 F.3d 529, 540 (5th Cir. 2015) (any internal warnings to management were ***after*** majority of pled statements were made, and all other statements were made after red flags were ***publicly disclosed***).

[14]    The Objections reliance on *Flotek* is misplaced. Objections at 29. There, the Fifth Circuit held that referring to a new software as "conclusive" was not reckless where it was undisputed the software was beneficial, and the plaintiffs did not allege the defendants should have known the data was unreliable. *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 983 (5th Cir. 2019).

in blind faith in the face of conflicting data. The Objections' contention this should be an inference in their favor is comical. "[G]ambles need not be perfectly rational to support a 10b-5 claim," *In re Boeing Co. Aircraft Sec. Litig.*, 2022 WL 3595058 at *27 (N.D. Ill. Aug. 23, 2022), and "[t]he fact Defendants' gamble" failed is not inconsistent with a "considered," albeit reckless, bet. *Patel v. Axesstel, Inc.*, 2015 WL 631525 at *13 (S.D. Cal. Feb. 13, 2015).

This matter is strikingly similar to *Apache*, a far more relevant and recent decision from this District than any decision cited to by Defendants.[15] In *Apache*, the court rejected the defendants' non-culpable inference as going "too far" where they argued it would be "illogical and irrational" for them to "promote a play they knew, all along, would fail miserably." 2022 WL 4277350, at *7. According to the court in *Apache*, the plaintiffs' more plausible reckless gamble theory, buoyed by FE allegations, was that the defendants "willfully ignored" adverse data when they went "all in … gambling that they would figure something out." *Id.* Critically, the court reached this determination even assuming the defendants believed they were acting in the company's best interests. *Id.* Relying on the same quote from Judge Posner from *Tellabs* as quoted in the Report, the court in *Apache* determined that the plaintiffs had succeeded in pleading an inference "at least as compelling as any alternative inference" that the defendants "acted

---

[15]     The cases relied upon have no application here. *See, e.g., Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 273 F. Supp. 3d 650, 665, 667-68 (N.D. Tex. 2017) (concerning purported belief retail inventory could be sold, not whether multi-billion dollar experiments would work while disregarding data); *Oppenheim Pramerica Asset Mgmt. S.A.R.L. v. Encysive Pharm., Inc.*, 2007 WL 2720074, at *4 (S.D. Tex. Sept. 18, 2007) (belief FDA would approve drug not actionable where risks of non-approval were disclosed and FDA merely wanted "additional clinical trial data"); *MicroCapital Fund LP v. Conn's Inc.*, 2019 WL 3451153, at *19 (S.D. Tex. July 24, 2019) (sustaining fraud claims; strong inference of scienter including from FE statements and post-class period admissions); *In re Guess?, Inc. Sec. Litig.*, 174 F. Supp. 2d 1067, 1078 (C.D. Cal. 2001) (accounting case where plaintiff failed to allege "scope of the [accounting] problem and how [it was] reported"); *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1248 (10th Cir. 2016) (no allegations of disregard of conflicting data or deviation from historical norms); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 433 (5th Cir. 2002) (accounting case where it was not alleged defendants had access to adverse information prior to restatement).

recklessly." *Id.* Thus, just as in *Apache*, Defendants' hope the transition to manufacturing mode would be a massive success has no bearing on scienter, let alone afford a non-culpable inference.

### 4.    FE Accounts Contribute to a Strong Inference of Scienter

As discussed *supra* Section V.A, Judge Sheldon followed *Six Flags* by concluding that allegations related to seven of the FEs and may contribute to a strong inference of scienter. *Compare Six Flags*, 2023 WL 228268 at *11 (inference of scienter met based on FE statements that he compiled "weekly presentations" and "master reports" which were relayed to senior Six Flags management), *with* Opposition at 27-33 (FE statements Defendants had access to production databases which correctly quantified risk, attended weekly meetings discussing large-scale development, and were repeatedly warned Concho was under-risking wells by FE-1); *see also Spitzberg*, 758 F.3d at 682-84 (scienter found for statements on oil and hydrocarbon success where FE reported that actual data did not match the claims).

### 5.    Core Operations Is Applicable Here

The Objections make a slew of arguments as to why Judge Sheldon erred by finding core operations aided a strong inference of scienter, all of them unavailing in light of *Six Flags*. Objections at 23-26. First, there is no requirement the company "must" be small. *Id.* at 23. As articulated by the Fifth Circuit, and evident by its holding core operations applied to a multibillion-dollar company, company size is but one factor to "tip the scales." *Six Flags*, 58 F.4th at 219. Other factors include whether the issue was "critical to the company's continued vitality," "whether the misrepresented information would have been readily apparent to the speaker," and whether "the defendant's statements were internally inconsistent with one another." *Id.*; *see also Cannon*, 184 F. Supp. 3d at 484 ("when the statements at issue concern transactions critical to the company's continued validity and when the misrepresented or omitted information at issue would have been readily apparent to the speaker ... [n]o one special circumstance is dispositive.").

26

Inferences that the transition to manufacturing mode was critical to Concho's continued viability fall squarely within *Six Flags*. In *Six Flags*, the Fifth Circuit found an inference of scienter despite the defendants' "characterization that the China parks were just 3% of Six Flags' revenue," as the parks were touted as a "'key growth driver' and projected they would increase EBITDA by 20 to 40%," and thus while "not critical to Six Flags' survival, … [the China parks] were an important aspect of future growth prospects and EBITDA." 58 F.4th at 219. Here, the Complaint has alleged that the Dominator made up 3% of Concho's budget and that 90% of said budget was devoted to tight well-spacing in 2018. Report at 44. Moreover, Defendants themselves stated that large-scale development represented 80% of Concho's budget in 2019. *Id.* Defendants also repeatedly touted the transition to manufacturing mode as an "inflection point" that "[would] continue to drive growth, innovation and efficiencies" and raised guidance accordingly, even indicating it would grow oil by 20%.[16] *Id.*

The other factor analyzed by the Fifth Circuit in *Six Flags* was "readily apparent" facts. 58 F.4th at 219. Specifically, that "[d]efendants stated during the February 2019 earnings call that they had performed a comprehensive review of … project timelines … implying they knew details of the progress or its absence at the China parks." *Id.* In addition to the Report's fulsome falsity analysis, Judge Sheldon recalled allegations on Defendant Giraud's conscious decision to under-risk wells, ignoring protests from " a member of the technical staff that designed and executed the Dominator project" (¶74).[17] Report at 17, 44-45; *see supra* Sections V.B.1-4 (discussing

---

[16]    Sidestepping the mirrored facts in this matter, the Objections attack Judge Sheldon for being "[u]nable to squeeze core operations out of Dominator." Objections at  24. Setting aside the damning nature of Defendants' Company-wide reversionary well-spacing measures with respect to portfolio allegations, *Six Flags*—the most recent Fifth Circuit case to discuss core operations and therefore controlling—found core operations with only one business venture representing 3% of revenue. Therefore, the Dominator alone should be sufficient to find core operations.

[17]    Based on the totality of scienter allegations in this matter, discussed herein, it is distinguishable from the Court's pre-*Six Flags* opinion in *Yang v. Zhang Yang v. Nobilis Health Corp.,* where scienter was not sufficiently pled merely

Report's determination public statements on transition to manufacturing mode regarding benefits of, basis for, guidance in relation to, and overall portfolio exposure therefrom, were false and misleading when made); *see also Plotkin v. IP Axess Inc.*, 407 F.3d at 700 (5th Cir. 2005) ("[i]t is reasonable to assume, given the importance of the[] deals to the company, that [defendant] would have familiarized itself with ... and … discovered details about" omitted information).

Finally, the Objections harp on the uncontroversial point that core operations cannot alone suffice to create a strong inference of scienter. Objections at 26. This does not contradict anything in the Report. Report at 44. Here, the Report relied on numerous other allegations and circumstantial evidence in addition to core operations, *e.g.*, FE statements, Defendants' access to information, participation in the Company's day-to-day affairs, post-Class Period admissions, to find that the Defendants were at least severely reckless.

### 6. The Objections Fail to Rebut Circumstantial Evidence of Scienter

***Access to Information/Meetings.*** The Objections' argument that the Complaint must point to specific meetings and documents with pinpoint accuracy to add to an inference of scienter is incorrect, and the transparent attempt to warp the specificity of the Complaint's allegations telling. *See Hill v. State St. Corp.*, 2011 WL 3420439, at *14 (D. Mass. Aug. 3, 2011) ("placing the source of each individual allegation under a microscope distorts obligations under Rule 9 and the PSLRA"). Because the Complaint, *e.g.*, "specifies [the] tracking systems which were used, naming the systems and what each tracked, and what the confidential sources allege Defendants knew based on these reports[,]" it pleads "sufficient evidence that Defendants had actual

---

by reference to "corporate positions." 2020 WL 5512456, at *2-3 (S.D. Tex. Sept. 14, 2020). Moreover, in *Yang*, the Court declined to adopt portions of the magistrate report based on "concern[] … the conclusion was reached using sources outside the scope of those sources allowable when weighing a motion to dismiss and that it failed to treat factual allegations as true and in the light most favorable to Plaintiff"—precisely the result Defendants seek to garner here. *Id.* at *1-2.

knowledge to indicate their alleged misstatements and omissions could be materially misleading, thereby allowing the Court to infer scienter." *Brody v. Zix Corp.*, 2006 WL 2739352, at *7 (N.D. Tex. Sept. 26, 2006).[18] With respect to meetings, as touched on above, the Complaint was not required to provide an exact calendar of events. *See In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 664 (S.D. Tex. 2021) (plaintiff not required to "plead[] the precise dates and contents of specific reports").[19]

*Admissions.* The Objections ask the Court to treat admissions as backward-looking explanations to refute scienter. Objections at 22-23. Such request that the Court accept a competing interpretation of events is "fact-based and ... insufficient to support a motion to dismiss." *Holzwasser*, 2006 WL 897746, at *4. "[E]vidence of later events can provide useful circumstantial evidence that a given representation was false when made." *Masel v. Villarreal,* 924 F.3d 734, 750 (5th Cir. 2019). Moreover, Concho's manufacturing mode projects took well over a year of planning and construction, as evidenced by the fact Dominator planning began in August 2017 (¶77). Thus, well-spacing was not a "surprise" which Defendants promptly disclosed upon discovery, but known from the outset.[20] *See Lormand*, 565 F.3d at 254 (admissions regarding defendants' own state of mind at the time of their misrepresentations raise a strong

---

[18]   *See also, e.g.*, *Exxon Mobil*, 334 F. Supp. 3d at 853 (holding that defendants' access to contradictory information provided "more than mere conclusory allegations that Defendants ... must have had knowledge" of the information).

[19]   *See also, e.g.*, *In re ITT Educ. Servs., Sec. Litig.*, 34 F. Supp. 3d 298, 307 (S.D.N.Y. 2014) (circumstantial evidence supporting scienter where FEs "confirm[ed] that Defendants … routinely attended meetings at which [issues] were discussed"); *Exxon Mobil*, 334 F. Supp. 3d at 852-53 (given regular discussions and briefings about climate change risks, individual defendants "would have extensive knowledge of the proxy cost of carbon and should have known a different proxy cost was stated ... than was actually applied to business operations and investments").

[20]   In this regard, the cases cited by the Objections are distinguishable. *See, e.g.*, *Azurix*, 332 F.3d at 867-86 (misplaced reliance on third party report which significantly post-dated the alleged disclosures); *Loc. 210 Unity Pension & Welfare Funds v. McDermott*, 2015 WL 1143081, at *10 (S.D. Tex. Mar. 13, 2015) (disclosure of after the fact "poor project management" could not establish scienter for "generalized, optimistic statements").

inference of scienter). Additionally, the temporal proximity to positive statements concerning the Dominator and the well-spacing disclosures further supports an inference of scienter.[21]

### D. Objections Against Control Person Allegations Are Moot

In the Motion, "Defendants contest[ed] [Lead] Plaintiffs' § 20(a) claims only on the basis that the underlying § 10(b) claim should be dismissed. Because those arguments fail[ed], Defendants' assertions regarding [Lead] Plaintiffs' claims under § 20(a) of the Exchange Act [were] also without merit." Report at 49 (citing *Indiana Elec.*, 537 F.3d at 545). Because the Objections' primary arguments fail, so do all secondary arguments reliant thereon.

### E. Policy Arguments Are Not Properly Before the Court

Finally, the Objections make the policy argument that should this matter proceed into discovery, the societal reverberations will be so profound as to have a "chilling effect on innovation."[22] Objections at 30. Performative fatalism aside, the Court's review is strictly limited only to the findings in the Report to which Defendants object, further limited by those arguments originally made in the Motion. Regardless, the Exchange Act doesn't provide "innovation"-based mulligans for fraud.

## VI. CONCLUSION

For the foregoing reasons, the Objections should be overruled in their entirety.[23]

---

[21] Concho and Defendant Leach disclosed on July 31, 2019 and August 1, 2019 that Dominator's "well spacing was too tight" (¶300) and that Concho "developed the Upper Wolfcamp too densely." ¶302. These announcements concerning Dominator came less than five months after Concho's positive March 4, 2019 (¶¶282-84) and April 30, 2019 positive statements (¶¶285-97). *See Plotkin*, 407 F.3d at 698-700 ("events following so closely on the heels of [an] announcement"—***within six months***—"cast doubt on the viability of those transactions from their inception" giving rise to a strong inference that defendants "knew or was severely reckless in not knowing"); *Frank v. Dana Corp.*, 646 F.3d 954, 960 (6th Cir. 2011) ("[t]emporal proximity" of "positive and corrective statements" supports scienter).

[22] The case cited by the Objections adds to the ever-growing pile of non-analogous authority. *See In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*, 2014 WL 585658, at *1 (S.D.N.Y. Feb. 14, 2014) (dicta in out of Circuit case regarding publicly disclosed drug trial).

[23] If the Court determines to sustain the Objections, and in so doing dismisses any portion of the Complaint, Lead Plaintiffs respectfully request leave to amend the Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure as this is the first complaint this Court has considered on this matter.

DATED: May 4, 2023

Respectfully submitted,

*/s/ Alfred L. Fatale III*
**LABATON SUCHAROW LLP**
Alfred L. Fatale III (*pro hac vice*)
Charles Wood (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
afatale@labaton.com
cwood@labaton.com

*Lead Counsel for Lead Plaintiffs and the Class*

31

## CERTIFICATE OF SERVICE

I certify that on May 4, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

/s/ Alfred L. Fatale III
Alfred L. Fatale III